■ In the Matter of CABRINI MEDICAL CENTER, Appellant, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents.—Harvey, J. Appeal from a judgment of the Supreme Court at Special Term (Kahn, J.), entered February 11, 1985 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to annul respondents' determination denying petitioner's request for relief from Medicaid reimbursement ceilings for the years 1975 to 1979.

Petitioner, a not-for-profit corporation organized pursuant to Public Health Law article 28 and located in Manhattan, was originally an acute care facility which also included a health-related facility (HRF). In 1973, it expanded from a 288 to a 478-bed facility. It began the conversion of its HRF to a skilled nursing facility (SNF) in 1974 upon the recommendation and the approval of the Department of Health.

The dispute in the appeal before us concerns the application of Public Health Law § 2807 (3) in the establishment of Medicaid reimbursement rates for the operation of the SNF portion of petitioner's over-all complex and the phasing out of the HRF operation. The thrust of petitioner's argument is that it was reimbursed for considerably less than the fair and reasonable costs incurred in its efficiently operated facility. Its shortfall amounted to $220,242 in 1975, $299,347 in 1976 and $418,387 in 1977. Its explanation for the shortfall was that, although respondents accepted the cost figures as provided by petitioner for all the years in question, they were accepted subject to a ceiling established by a procedure known as "peer grouping". This procedure was established by 10 NYCRR former 86.13, originally adopted in 1968 (see, 10 NYCRR former 86.14, now 10 NYCRR 86-2.11). Essentially, it finds the cost factors experienced by a number of facilities and computes an average, which it then adopts as a ceiling in the establishment of rates. It is a pragmatic device not sufficiently reliable to determine in all instances the reasonable costs of an efficiently operated facility. Respondents have, over a period of time, recognized this fact and have continuously been involved in an evolutionary process to remedy its defects.

Petitioner claims that it was severely prejudiced by this

procedure, primarily because none of the members of the peer group were similarly situated to petitioner. No member of the peer group was a hospital-based SNF. The members of the group were both SNFs and HRFs, located in many instances outside the metropolitan New York area. Only a small percentage of the facilities of the group were unionized and only a few were compelled to provide fringe benefits to its employees in as generous a measure as required of petitioner. The fact that this was a hospital-based SNF is of considerable importance in two respects. Federal and State authorities mandate a nondiscretionary, "step down" method of allocating costs between a hospital and a hospital-based nursing facility (see, 10 NYCRR former 86.14 [d], now 10 NYCRR 86-2.11). A free-standing facility is not charged for the costs incurred by any acute care facility. Secondly, it appears to be an established fact that a hospital-based SNF accepts the transfer of more seriously disabled patients from its acute care facility to its SNF than those ordinarily accepted by free-standing SNFs. At the administrative hearing, findings of fact were made substantiating petitioner's claim that the group cost experience relied upon by respondents in establishing ceilings for petitioner was less than petitioner's experience.

In spite of those findings of fact, both respondents and Special Term found that the rates were established pursuant to law and regulations adopted by respondent Commissioner of Health. Special Term therefore dismissed the petition in this CPLR article 78 proceeding challenging respondents' determination, giving rise to this appeal by petitioner.

Relief from disadvantageous rates in the year 1975 was provided by 10 NYCRR former 86.17, which authorized revisions for: "significant increases in the over-all operating costs of a medical facility resulting from capital renovation, expansion, replacement or the inclusion of new programs, staff or services approved for the medical facility by the commissioner" (10 NYCRR former 86.17 [a] [4] [eff Nov. 26, 1975]). The applicable regulation for the 1976-1977 rate period authorized revisions in certified rates based upon a facility's request for ceiling relief where the facility demonstrated that: "its range of approved services, patient mix, lengths of appropriate stays or other pertinent factors are direct causes for all or part of the costs in excess of the ceilings" (10 NYCRR 86-2.14 [a] [7] [eff Sept. 30, 1976]).

Respondents' decision, based upon the Commissioner's narrow interpretation, held those regulations to be inapplicable to the facts of the cases on appeal. Thus, in spite of the fact that

no claim has been made that petitioner's SNF was an inefficiently operated facility and in spite of the fact that shortfalls were experienced in each of three years for a total amount of approximately $1 million, both respondents and Special Term interpreted the regulations in such a manner as to preclude relief.

The Commissioner interpreted 10 NYCRR former 86.17 (a). (4) for the year 1975 to authorize a change of rates but not of ceilings. The Commissioner interpreted the language "or other pertinent factors" of 10 NYCRR 86-2.14 (a) (7) for the 1976-1977 rate period as not referable to the inequitable situation caused by the Commissioner's "peer grouping" technique. We disagree.

It is an obvious and fundamental rule of construction that words of common usage are to be given their ordinary meaning *(Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd.,* 51 NY2d 506, 511). The "rates" which petitioner sought to change for the rate year 1975 were the reimbursable per diem rates for Medicaid patients. The rate was influenced by the ceiling but it was the Commissioner's ultimate rate after ceiling limitation which petitioner sought to modify. We conclude that the plain language of the regulation permits such modification even though it does not address itself specifically to ceilings.

10 NYCRR 86-2.14 (a) (7) was added the following year and did address itself to ceilings. We conclude that the literal interpretation of the words "or other pertinent factors" makes the section applicable to the facts of this case. When we review the evolution of the "peer grouping" concept to its present requirement for separate groupings of hospital-based SNFs, we recognize that a need has existed for safety-valve regulations. We view the contested regulation as serving that purpose. The ultimate purpose of the regulations is to assist the Commissioner in establishing rates which "are reasonable and *adequate* to meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807 [3], as amended by L 1982, ch 536, § 3; emphasis supplied). Although the courts normally assume that an agency, because of its expertise, is in the best position to interpret its regulations *(Matter of Howard v Wyman,* 28 NY2d 434, 438), arbitrary and capricious interpretations will not be condoned *(Fishkill Health Related Facility v Whalen,* 95 AD2d 974, 975-976). The duty of the Commissioner is as great in establishing rates which are adequate as is his duty to eliminate unnecessary expense. The statutory objective

must be met *(Matter of Neverett v New York State Dept. of Health,* 89 AD2d 719, 720).

We conclude, as did respondents, that petitioner's unique factors resulted in unreimbursed costs in excess of the ceilings. The peer grouping which took place did not provide a reliable basis for allowable costs for an efficiently operated facility. Regulations in effect during the years in question permitted the Commissioner to properly amend the rate schedules. The Commissioner's refusal to do so was arbitrary and capricious. We therefore reverse the judgment and remit the matter to the Commissioner for action not inconsistent herewith.

Judgment reversed, on the law, with costs, determination annulled and matter remitted to respondent Commissioner of Health for further proceedings not inconsistent herewith. Mahoney, P. J., Main, Weiss, Yesawich, Jr., and Harvey, JJ., concur.