■ In the Matter of HOLLISWOOD CARE CENTER, Petitioner, v DAVID AXELROD, as Commissioner of Health of the State of New York, Respondent.—Casey, J. P. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a deter-

mination of respondent which denied petitioner's Medicaid reimbursement rate appeal.

Petitioner, a residential health care facility located in Queens County, began operating in 1975 as a 320-bed health-related facility (hereinafter HRF). Since it was newly licensed and had no cost history, petitioner's Medicaid reimbursement rate was determined by reference to the group average rate paid to other comparable facilities based upon size and geographical location. Thus, petitioner received the group average rate applicable to a 320-bed HRF located in the New York City area. Due to a shortage of skilled nursing facility (hereinafter SNF) beds in 1975, the State Health Department requested that petitioner convert 60 of its HRF beds to 58 SNF beds.[1] Petitioner contends that it agreed to the request only after receiving assurances that there would be no downward adjustment in its reimbursement rate due to the conversion.

The conversion to a combined 260-bed HRF and 58-bed SNF became effective October 1, 1975. Thereafter, the Department notified petitioner that its reimbursement rate was being revised, with its HRF rate based upon the group average for facilities with 200 to 299 beds and its SNF rate based upon the group average for facilities with 51 to 99 beds.[2] Contending that it was entitled to have both rates determined on the basis of the group average for facilities with 300 or more beds, petitioner commenced an administrative appeal that was punctuated by delay and litigation (see, Matter of Holliswood Care Center v Axelrod, 88 AD2d 709, lv dismissed 60 NY2d 631). As a result of the administrative proceeding, petitioner's appeal was granted as to its HRF reimbursement rate but denied as to its SNF rate, prompting this CPLR article 78 proceeding to challenge the determination as to the SNF reimbursement rate.

The petition asserts five specific grounds for annulling respondent's determination. Three of those grounds may be readily disposed of by reference to Matter of Cortlandt Nursing Care Center v Whalen (46 NY2d 979). Petitioner contends that there was no regulatory authority for respondent's treatment of the HRF and SNF portions of petitioner's facility as separate and distinct entities for group averaging purposes. Petitioner also contends that it was arbitrary and capricious

---

1. SNF beds require a higher degree of care than HRF beds, calling for greater staffing and greater services from the facility.

2. For both SNFs and HRFs the larger the size of the facility with which they are grouped the higher the rate.

for respondent to place petitioner's 260-bed HRF in the 300 or more bed classification, while placing petitioner's 58-bed SNF in the 51 to 99 bed classification. As to the regulation relied upon by respondent, 10 NYCRR former 86-2.11 (a), petitioner contends that it was not in effect at the time of petitioner's conversion from a 320-bed HRF to a 260-bed HRF and 58-bed SNF.

In *Matter of Cortlandt Nursing Care Center v Whalen (supra)*, respondent placed a 120-bed facility, comprised of 80 HRF beds and 40 SNF beds, in separate 51 to 99 bed classifications for the purpose of computing the facility's Medicaid reimbursement rate ceilings. Citing to the relevant regulation (10 NYCRR former 86.13, as amended by 10 NYCRR former 86-2.11) and noting respondent's broad authority to interpret his own regulations, the Court of Appeals held that respondent's determination to subdivide the facility for computation of Medicaid reimbursement rate ceilings was not arbitrary and capricious. The court recognized that "no classification, whatever its form, would have been perfect" *(supra,* at 981). In particular, since the operational costs of a 120-bed facility are greater than the sum of the operational costs of two smaller facilities of 40 and 80 beds, a pure subdivision of the 120-bed facility could result in underestimated costs *(supra).* The court also noted the equal inaccuracy entailed in treating the 80-bed HRF and 40-bed SNF as a single 120-bed facility *(supra).* In sustaining the determination, the Court of Appeals explained: "Faced with these alternatives, the commissioner opted to subdivide [the] facility for computation of rate ceilings. Cognizant of the possibility of underestimation of operational costs which subdivision might entail, the commissioner placed [the facility's] SNF in the 51-99 bed classification, rather than the 1-50 bed classification, notwithstanding the existence of only 40 SNF beds in [the] facility. Under these circumstances, we cannot say that the commissioner's determination was arbitrary and capricious" *(supra,* at 981).

We reach the same result in this case since the determination is based upon a similar interpretation of the same regulation. Respondent opted to subdivide petitioner's facility into its HRF and SNF components. Recognizing that petitioner's HRF grouping should not be altered as a result of petitioner's acquiescence in the Department's request to convert 60 HRF beds to 58 SNF beds, respondent placed petitioner's HRF back in the over-300-bed grouping. We see no inconsistency in this determination, and certainly no irrationality. As to petitioner's claim that 10 NYCRR former 86-2.11 (a) was not effective

until after the conversion took place, we note that *Matter of Cortlandt Nursing Care Center v Whalen (supra,* at 980) involved both 10 NYCRR former 86-2.11 and its predecessor 10 NYCRR former 86.13.

Petitioner points to testimony from a Department witness that administrative salary ceilings are determined differently, with the facility treated as a single facility irrespective of whether it had HRF and SNF components. Petitioner contends that this is an inconsistency which renders irrational the determination at issue herein. We disagree. As explained above, the determination at issue herein is consistent with a substantially similar determination previously approved by the Court of Appeals. Whether administrative salary ceilings and Medicaid reimbursement rate ceilings are so interrelated that respondent cannot accord dissimilar treatment is an issue that we will address when the matter is properly before us.

In its reply brief, petitioner for the first time asserts that the regulation which respondent has relied on throughout the course of the administrative proceedings applies only to reimbursement rate ceilings and not to the group average formula used to determine rates for newly licensed facilities. Besides being outside the scope of the specific issues raised in the petition,[3] the argument is meritless for it is premised on the theory that newly licensed facilities are not subject to reimbursement rate ceilings. The regulation at issue contains no such exemption and petitioner does not cite any statutory or regulatory authority which exempts newly licensed facilities from rate ceilings.

Petitioner's final argument concerns that portion of respondent's determination which found no specific agreement or promise by the Department about the manner in which petitioner's SNF beds would be treated if it agreed to make the conversion requested by the Department. Petitioner presented the only witness who was directly involved in the meetings preceding the conversion, which occurred some 12 years prior to the hearing. The witness testified that he had been assured by the Department that the proposed conversion would not result in a division of the facility into separate components for

---

**3.** Also outside the scope of the specific issues raised in the petition are petitioner's brief claims that the regulatory subdivision of a facility into its SNF and HRF components conflicts with the statutory definition of "nursing home" (Public Health Law § 2801 [2]). Since the statutory definition is a general one while the regulation is limited to Medicaid rate-setting methodology, a matter specifically delegated to respondent (Public Health Law § 2807 [3]), the claim is meritless.

rate-setting purposes. He conceded, however, that the alleged agreement was "not quite spelled out" and that there was no specific understanding as to exactly which rates would be used. He also admitted that he lacked an understanding of the nuances of rate setting at the time. Petitioner bore the burden of proof on the issue *(see, Matter of Mayflower Nursing Home v Office of Health Sys. Mgt.,* 88 AD2d 192, 194, *affd* 59 NY2d 935), and the record provides a rational basis for respondent to reject the witness's testimony that the Department had agreed or promised not to treat petitioner's SNF and HRF as separate components for rate-setting purposes *(see, Matter of Di Maria v Ross,* 52 NY2d 771, 772).

Accordingly, the determination should be confirmed and the petition dismissed.

Determination confirmed, and petition dismissed, without costs. Casey, J. P., Weiss, Levine, Mercure and Harvey, JJ., concur.