[597 NYS2d 757]

In the Matter of JEWISH HOME AND INFIRMARY OF ROCHESTER, NEW YORK, INC., Respondent, v COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF HEALTH et al., Appellants.

Third Department, May 13, 1993

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General,* Albany *(Clifford A. Royael* and *Peter G. Crary* of counsel), for appellants.

*Cadwalader, Wickersham & Taft,* New York City *(William J. Natbony, Peter G. Bergmann* and *Jeffrey Q. Smith* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

In June 1985, petitioner commenced operation of a nursing

home consisting of a 188-bed skilled nursing facility (hereinafter SNF) and a 174-bed health related facility (hereinafter HRF) in the City of Rochester, Monroe County. A participant in the Medicaid program, petitioner brought this CPLR article 78 proceeding in October 1991 to challenge its Medicaid reimbursement rates for rate years 1986 through 1991. In particular, petitioner contests respondent Department of Health's (hereinafter DOH) (1) application of its present and former so-called "recalibration regulation" (10 NYCRR 86-2.31 [a]) in rate years 1987 through 1991,[1] and (2) interpretation of 10 NYCRR 86-2.8 (c) in a manner that artificially inflates the number of reported patient days in petitioner's HRF for rate years 1986 through 1991. Supreme Court found merit to petitioner's contentions, granted the petition and remitted the matter to respondents for recomputation of petitioner's reimbursement rates for the respective years. Respondents appeal.

Initially, we agree with respondents that petitioner's challenge to DOH's application of the recalibration regulation for rate years 1987 and 1988 (see, 10 NYCRR former 86-2.31) is barred by the applicable Statute of Limitations. Because petitioner's challenge is to DOH rate-setting methodology and not to mere computational errors (compare, 10 NYCRR 86-2.13 [a], with 10 NYCRR 86-2.13 [b]), petitioner was required to commence this proceeding within four months of the 120-day period set forth in 10 NYCRR 86-2.13 (a) (see, CPLR 217; Matter of Sylcox Nursing Home & Health Related Facility v Axelrod, 184 AD2d 986, 987-988, lv denied 80 NY2d 761), commencing with petitioner's receipt of the initial rate computation sheets approximately two months prior to commencement of the respective rate years (see, 10 NYCRR 86-2.13 [a]; Public Health Law § 2807 [7]). We do not agree with Supreme Court's conclusion that petitioner's untimely and erroneous inclusion of its challenge to DOH methodology in a December 1989 rate appeal somehow revived the expired limitations period. In any event, petitioner's rate appeal was denied in April 1991 and later the same month petitioner was provided with written notice that rate-setting methodology could not be "included as a rate appeal issue" under 10 NYCRR 86-2.13 and 86-2.14. Petitioner did not commence this proceeding within four months of its receipt of either of those determina-

---

1. For a detailed description of the methodology utilized in computing Medicaid reimbursement rates in New York and, in particular, application of the former recalibration regulation, see *New York State Assn. of Counties v Axelrod* (78 NY2d 158).

tions. Respondents do not assert a limitations defense to petitioner's challenge to DOH's application of the amended recalibration regulation for rate years 1989, 1990 and 1991, however, and for the reasons recently stated in our decision in *New York State Assn. of Counties v Axelrod* (191 AD2d 932), we agree with Supreme Court's determination in that regard.

We now turn to petitioner's challenge to DOH's interpretation of 10 NYCRR 86-2.8 (c).[2] Because petitioner's facility was not in existence in 1983, the operating component of its reimbursement rate was set by reference to allowable costs incurred during the first six-month period that the facility had an over-all average utilization of at least 90% of bed capacity *(see,* 10 NYCRR 86-2.2 [e]; 86-2.14 [a] [1]; *compare,* 10 NYCRR 86-2.10 [b]).* As required by 10 NYCRR 86-2.2 (e), petitioner submitted a cost report for the period August 1, 1985 through January 31, 1986, during which petitioner reported a 99.6% occupancy rate for its SNF beds and an 82.0% occupancy rate for its HRF beds, for an over-all occupancy rate of 91.1%. Rather than apply 10 NYCRR 86-2.8 (c) literally and determine petitioner's residential health care facility days by using the actual patient days of care as furnished by the facility (which was greater than the minimum utilization factor of 90%), DOH made separate determinations for petitioner's SNF and HRF beds. Because the SNF facility utilization factor was over 90%, the actual number of SNF patient days was used; however, because the HRF facility utilization factor was less than 90%, DOH imputed the 90% occupancy rate in computing petitioner's HRF rates. As quite properly contended by petitioner, this methodology had the effect of maximizing the number of residential health care facility days to be utilized in computing petitioner's rates.

We agree with Supreme Court's conclusion that DOH's interpretation of the regulation is irrational *(cf., Matter of Holliswood Care Ctr. v Axelrod,* 155 AD2d 834). Although we recognize that prior to October 1, 1990 DOH was entitled to calculate separate reimbursement rates for SNF and HRF beds *(see,* 42 USC § 1396a [a] [13] [A]; *Matter of Amsterdam Nursing Home Corp. v Commissioner of N. Y. State Dept. of*

---

2. 10 NYCRR 86-2.8 (c) provides: "For reimbursement purposes residential health care facility days shall be determined by using the higher of the minimum utilization factor of 90 percent of certified beds or the actual patient days of care as furnished by the facility."

*Health,* — AD2d —, 1993 NY Slip Op 3062 [3d Dept, Apr. 22, 1993]), here the regulations specifically state that it is a facility's *"overall* average utilization of at least 90 percent of bed capacity" (10 NYCRR 86-2.2 [e] [emphasis supplied]) that triggers the requirement that a cost report be filed. Of even greater significance, 10 NYCRR 86-2.8 (c) provides for use of the greater of 90% of certified beds or "the actual patient days of care *as furnished by the facility"* (emphasis supplied). DOH's interpretation of the regulations as providing for an *over-all* occupancy rate to trigger the filing requirement and *segmented* occupancy rates for the resulting rate determination can serve no discernible purpose other than to minimize the facility's reimbursement rates.

MIKOLL, J. P., YESAWICH JR. and CREW III, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as enjoined respondents from utilizing 10 NYCRR former 86-2.31 in the calculation of petitioner's 1987 and 1988 reimbursement rates and annulled said rates on that basis; petition denied to that extent; and, as so modified, affirmed.