■ In the Matter of FIELD HOME-HOLY COMFORTER, Respondent, v COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF HEALTH et al., Appellants. [606 NYS2d 925] —Crew III, J. Appeal from a judgment of the Supreme Court (Cardona, J.), entered November 12, 1992 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul determinations of respondents establishing petitioner's 1986 through 1991 Medicaid reimbursement rates.

Petitioner is a nonprofit nursing home facility currently located in the City of Peekskill, Westchester County, and a participant in the Medicaid reimbursement program. At issue on this appeal is the manner in which petitioner's 1986 through 1991 Medicaid reimbursement rates were calculated. Prior to January 1986, Medicaid reimbursement rates were calculated on the basis of allowable costs incurred in a prior year—the base year—limited by cost ceilings determined by comparison to peer group facilities and increased by a trend factor to account for inflation. Adjustments to account for wage differentials among different facilities were made through the use of various peer groups, including one based upon the geographic region in which a particular facility was located. Under the methodology then existing, there were two geographic peer groups: the downstate region, which included facilities located in Bronx, Rockland, Westchester, Putnam, Nassau, Suffolk, Kings, New York, Richmond and Queens Counties, and the upstate region, which included all other counties in the State.

On January 1, 1986, the Department of Health (hereinafter DOH) implemented a new Medicaid reimbursement methodology, known as the Long Term Care Case Mix Reimbursement System, which determines a facility's per-patient, per-diem Medicaid rate based upon four cost components: direct, indirect, noncomparable and capital *(see,* 10 NYCRR 86-2.10 [b] [1] [ii]). This new methodology, *inter alia,* altered the manner in which wage differentials among the different facilities were treated and, insofar as is relevant to this appeal, changed the composition of the regional groupings. Specifically, DOH replaced the downstate and upstate groupings with 16 regional groupings, each containing one or more contiguous counties *(see,* 10 NYCRR 86-2.10 [c], [d], [m]). Under the former methodology, petitioner, which was then located in Bronx County, was placed in the downstate regional grouping. The implementation of the new methodology and petitioner's move to Westchester County in 1986 resulted in petitioner being grouped with other facilities located in Westchester and Rockland Counties.

Petitioner commenced the instant CPLR article 78 proceeding to challenge two aspects of its 1986 through 1991 Medicaid reimbursement rates. Specifically, petitioner contends that respondents placed it in an inappropriate regional group for purposes of calculating the direct and indirect cost components of its 1986 through 1991 reimbursement rates and, further, contests respondents' promulgation and application of

a recalibration regulation, which reduces the direct component of a facility's rates by a factor of between 0% and 3.035% *(see,* 10 NYCRR 86-2.31 [a]), to its 1987 through 1991 reimbursement rates.* After due consideration of the parties' submissions, Supreme Court found that the new recalibration regulation could not be applied retroactively to rate years 1989 through 1991 and, further, that respondents' placement of petitioner in the Westchester County regional grouping was irrational. As a result, respondents were directed to recalculate petitioner's 1986 through 1991 Medicaid reimbursement rates using the New York City regional grouping and to recompute petitioner's 1987 through 1991 reimbursement rates without reference to the recalibration regulation, either as initially promulgated or revised. This appeal by respondents followed.

Initially, we reject respondents' assertion that this matter should be remitted to DOH for recomputation of petitioner's 1989 through 1991 reimbursement rates using the new recalibration regulation. This Court has repeatedly held that application of 10 NYCRR 86-2.31 (a) to a facility's 1989 through 1991 rates constitutes impermissible retroactive rate making *(see, New York State Assn. of Counties v Axelrod,* 191 AD2d 932, 934, *lv dismissed* 82 NY2d 705; *see also, Matter of New York State Assn. of Homes & Servs. for Aging v Commissioner of N. Y. State Dept. of Health,* 195 AD2d 822, *lv granted* 82 NY2d 661; *Matter of Jewish Home & Infirmary v Commissioner of N. Y. State Dept. of Health,* 190 AD2d 197, *lv granted* 82 NY2d 661). Accordingly, Supreme Court's judgment should be affirmed to this extent.

Turning now to the issue of peer grouping, Public Health Law § 2807 (3) requires that respondent Commissioner of Health determine that the proposed reimbursement rates are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities". To that end, the Commissioner is required to take into consideration, *inter alia,* "geographical differentials in the elements of cost considered" *(id.).* Petitioner does not challenge the concept of peer grouping in general; indeed, petitioner acknowledges that peer grouping has been recognized as a

---

* The initial recalibration regulation, with an implementation date of July 1, 1987 and retroactive to January 1, 1987, was found to be lacking a rational basis and declared null and void *(see, New York State Assn. of Counties v Axelrod,* 78 NY2d 158). DOH thereafter repealed this regulation and promulgated a new recalibration methodology for rate years 1989 through 1991 *(see,* 10 NYCRR 86-2.31 [a]).

component of an effective cost control system *(see, Matter of Blase v Axelrod,* 146 AD2d 867, 868; *see also, Matter of Jewish Mem. Hosp. v Whalen,* 47 NY2d 331, 341). Rather, petitioner contends that it is "unique and readily distinguishable" from the other members of the Westchester County group *(Matter of Bassett Hosp. v Axelrod,* 156 AD2d 826, 828) and, therefore, its inclusion in that particular group for purposes of calculating its 1986 through 1991 reimbursement rates was irrational.

In challenging its placement in the Westchester County group, petitioner bore the burden of producing "some comparative evidence between it and the other peer-group members" to demonstrate that its inclusion in that particular group was irrational *(Matter of Blase v Axelrod, supra,* at 868). This petitioner has failed to do. It is apparent from the record that petitioner's wage and fringe benefit rates were set by a collective bargaining agreement entered into with Local 1199 while it was still located in Bronx County and that petitioner's wage expenditures were governed by the terms of that agreement following its relocation to Westchester County. As a result, petitioner did indeed experience wage expenditures that were higher than some comparable facilities included in the Westchester County group. It does not appear, however, that petitioner's wage expenditures were the highest incurred by comparable facilities in its peer group, and petitioner has failed to tender sufficient additional evidence to substantiate its claim that its labor costs are so unique and/or vastly dissimilar from its peers that inclusion in the Westchester County regional group is irrational *(see supra; cf., Matter of University Hosp. v New York State Dept. of Health,* 179 AD2d 989, *lv denied* 80 NY2d 756; *compare, Matter of Cabrini Med. Ctr. v Axelrod,* 116 AD2d 834). Petitioner's remaining arguments have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure, White and Yesawich Jr., JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted the petition to the extent of directing respondents to recalculate petitioner's 1986 through 1991 Medicaid reimbursement rates by placing petitioner in the New York City regional grouping and enjoining respondents from placing petitioner in the Westchester/Rockland regional grouping; petition dismissed to said extent; and, as so modified, affirmed.