■ In the Matter of FIELD HOME-HOLY COMFORTER, Respondent-Appellant, v ANTONIA NOVELLO et al., Appellants-Respondents. [815 NYS2d 750]—

In a proceeding pursuant to CPLR article 78 to review certain determinations of the New York State Department of Health, dated March 5, 1999, setting the petitioner's Medicaid reimbursement rates, Antonia Novello, as Commissioner of the New York State Department of Health, Wayne Osten, as Director of the Office of Health Systems Management of the New York State Department of Health, and Robert L. King, as Director of the Budget of the State of New York, appeal (1), as limited by their notice of appeal and brief, from stated portions of an order of the Supreme Court, Westchester County (Neary, J.), entered November 18, 2003, as amended December 22, 2003, which, inter alia, granted the petition to the extent of vacating the determinations in part and remitting the matter for consideration of certain documentation to be submitted by the petitioner and recalculation of certain Medicaid reimbursement rates, and (2) from so much of an order of the same court (Lefkowitz, J.) entered March 2, 2004, as, upon renewal and reargument, adhered to the original determination, and the petitioner cross-appeals (1) from stated portions of the order entered November 18, 2003, as amended December 23, 2003, and (2) from the order entered March 2, 2004, which granted the motion of Antonia Novello, as Commissioner of the New York State Department of Health, Wayne Osten, as Director of the Office of Health Systems Management of the New York State Department of Health, and Robert L. King, as Director of the Budget of the State of New York, for renewal and reargument.

Ordered that the appeal and the cross appeal from the order entered November 18, 2003 are dismissed, without costs or disbursements; and it is further,

Ordered that on the Court's own motion, the notice of appeal and the notice of cross appeal from the order entered March 2, 2004 are treated as applications for leave to appeal and leave is granted (*see* CPLR 5701 [c]); and it is further,

Ordered that the order entered March 2, 2004 is modified, on the law, by deleting the provisions thereof adhering to so much of the prior determination as (1) directed Antonia Novello, as Commissioner of the New York State Department of Health, Wayne Osten, as Director of the Office of Health Systems Management of the New York State Department of Health, and Robert L. King, as Director of the Budget of the State of New York, to consider an initial six-month cost report for the petitioner's 50-bed health-related facility and issue a reimbursement rate as to operating expenses, (2) directed them to recalculate the reimbursement rates for the petitioner's skilled nursing facility for the period from January 1, 1992 through June 30, 1992, and for the petitioner's nursing facility as a whole from July 1, 1992 onward, without applying annual recalibration adjustments, and (3) declared that they lacked a rational basis for employing square root methodology for annualizing the cumulative coding estimate in calculating annual recalibration adjustments pursuant to 10 NYCRR 86-2.31, and substituting therefor provisions (1) directing Antonia Novello, as Commissioner of the New York State Department of Health, Wayne Osten, as Director of the Office of Health Systems Management of the New York State Department of Health, and Robert L. King, as Director of the Budget of the State of New York to elect between (a) treating the petitioner's 50-bed health-related facility as a separate facility and setting its initial Medicaid reimbursement rate pursuant to a six-month cost report for the health-related facility alone or (b) treating the petitioner's health-related facility and its skilled nursing facility collectively as a single facility for purposes of determining its Medicaid reimbursement rate for its initial period of operation in Westchester County, and (2) directing them to recalculate the reimbursement rates for the petitioner's skilled nursing facility for the period from January 1, 1992 through June 30, 1992, and for the petitioner's nursing facility as a whole from July 1, 1992 onward, with the percentage increase in case mix attributable to length of stay being treated as zero for purposes of calculating the annual recalibration adjustment; as so modified, the order entered March 2, 2004 is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the order entered November 18, 2003, as amended December 22, 2003, is modified accordingly.

The appeal and cross appeal from the order entered November

18, 2003, as amended December 22, 2003, must be dismissed as no appeal lies as of right from an order in a proceeding pursuant to CPLR article 78 (*see* CPLR 5701 [b] [1]), and leave to appeal has not been granted (*see* CPLR 5701 [c]). Furthermore, the appeal and cross appeal from the order entered November 18, 2003 must be dismissed because the order was superseded by the order entered March 2, 2004, made upon renewal and reargument.

In 1986 the petitioner, a nursing home and certified Medicaid service provider, relocated from the Bronx to Peekskill, in Westchester County, where it continued to operate its 150-bed skilled nursing facility (hereinafter SNF) and began operating a 50-bed health-related facility (hereinafter HRF) in the same building. Prior to October 1990, SNFs served residents in need of more intensive care and received a higher rate of Medicaid reimbursement than HRFs. The New York State Department of Health (hereinafter the DOH) treated the HRF as a separate "new facility" for purposes of setting its Medicaid reimbursement rate at the low end of a range of possible rates (*see* 10 NYCRR 86-2.15 [b]). Yet, when the petitioner sought to become eligible for a higher reimbursement rate by filing a cost report on behalf of the HRF, the DOH treated the HRF as a mere component part of a "new facility," concluding that, pursuant to 10 NYCRR 86-2.2 (e), the report could not be filed until the entire nursing home had attained 90% occupancy for a period of six months. The petitioner commenced this proceeding against the DOH's Commissioner, its Health Systems Management Director, and the State Budget Director (hereinafter collectively the appellants-respondents), challenging, inter alia, the initial rate established for the HRF and the DOH's calculation of the petitioner's annual recalibration adjustment.

The Supreme Court correctly concluded that the DOH's simultaneous treatment of the HRF as a separate facility for one purpose and a mere branch of a facility for another was arbitrary and capricious (*see Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health*, 84 NY2d 252, 265-266 [1994]). As the Supreme Court noted, however, either determination—treating the HRF consistently as a separate facility, or treating it consistently as only part of a facility—standing alone, would have a rational basis. On remittitur, the appellants-respondents shall elect one of those two options.

The DOH calculates for each facility an annual recalibration adjustment, which is designed to exclude from Medicaid compensation those rate increases which are attributable to

providers' improved ability to document the condition of patients in the rate-setting paperwork, as opposed to actual changes in the patients' condition (*see* 10 NYCRR 86-2.31). The "actual percentage increase in case mix" (hereinafter actual increase), reduced by the "percentage increase in case mix attributable to length of stay," is the number to be "annualized" in order to produce the annual recalibration adjustment (*see* 10 NYCRR 86-2.31 [b] [2] [viii]). In the petitioner's case, there was actually a decrease in the "case mix attributable to length of stay," rendering the "percentage increase" in that value a negative number. The record reveals that the DOH subtracted that negative number from the actual increase by treating it as a positive number and adding that number to the actual increase. The DOH then "annualized" the resulting percentage by converting it into decimal form, adding a value of one, calculating the square root of the resulting number, subtracting a value of one, and converting the resulting figure back into percentage form. During the proceedings in the Supreme Court, the appellants-respondents agreed to recalculate the annual recalibration adjustment for the SNF and for the facility as a whole, this time treating the percentage increase in case mix attributable to length of stay as zero and, with respect to the HRF, agreed to forgo an annual recalibration adjustment altogether. Our determination reflects that agreement to recalculate, and the DOH's calculations were otherwise rational and not arbitrary and should not be disturbed.

The petition did not challenge the DOH's recalibration methodology (as opposed to its calculations), and if it had, the appellants-respondents could have invoked a valid statute of limitations defense (*see* CPLR 217; 10 NYCRR 86-2.13 [a], [b]; *Lyden Nursing Home v DeBuono*, 287 AD2d 490 [2001]; *Matter of Sylcox v Chassin*, 227 AD2d 834, 836 [1996]; *Charles P. Sitrin Nursing Home Co. v McBarnette*, 198 AD2d 579, 580 [1993]; *Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health*, 190 AD2d 197 [1993], *affd* 84 NY2d 252 [1994]). Therefore, upon renewal and reargument, the Supreme Court should have deleted from its original determination the provision invalidating the DOH's square root methodology for "annualizing" the recalibration adjustment (*see Olean Urban Renewal Agency v Herman*, 101 AD2d 712 [1984]; *Esa v New York Prop. Ins. Underwriting Assn.*, 89 AD2d 865, 866 [1982]).

The parties' remaining contentions are without merit. Adams, J.P., Luciano, Mastro and Skelos, JJ., concur.