NORBERT BERGER, Respondent, v NEW YORK STATE DEPART-
MENT OF SOCIAL SERVICES, Appellant.

Third Department, June 25, 1992

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Clifford A. Royael* and
*Nancy A. Spiegel* of counsel), for appellant.

*Lifshutz, Polland & Associates (Joseph K. Gormley* and *Joseph J. La Barbera* of counsel), for respondent.

**OPINION OF THE COURT**

HARVEY, J.

Plaintiff, a physician licensed to practice in New York, is a radiologist with a subspecialty in sonography, also known as ultrasound. Plaintiff was, during all relevant times, a Medicaid provider who performed and billed Medicaid for sonographic examinations performed on Medicaid recipients. Among those billings were ones for consecutive sonograms on one or more patients during a single visit and, in each case, plaintiff billed each sonogram at the full amount set forth in the Medicaid Management Information System (hereinafter MMIS) reimbursement fee schedule.

In April 1988 defendant informed plaintiff that, after reviewing the claims submitted by plaintiff in 1986 and 1987, its analysis showed that plaintiff allegedly improperly failed to use the MMIS modifier "-62" described in the MMIS Provider Manual when submitting claims for multiple sonograms performed during a single visit. At the relevant time, the MMIS manual's definition of the -62 modifier read as follows:

<u>Multiple X-Ray Exams</u>: When more than one x-ray exam is performed during the same visit, use the usual fee code for the primary procedure and identify the secondary procedure(s) by adding the modifier '-62' to the procedure number(s). (Reimbursement will not exceed 60% of the maximum State Medical Fee Schedule amount.)"[1] According to defendant, the term "x-ray" in the MMIS -62 modifier was meant to refer to all radiological procedures, including the sonograms performed by plaintiff. Accordingly, defendant demanded that plaintiff repay $265,748 of alleged overpayments for procedures where the -62 modifier allegedly should have been applied but was not.

Plaintiff disputed defendant's conclusion that he improperly failed to use the -62 modifier. The parties agreed that plaintiff would bring a declaratory judgment action upon a stipulated set of facts to decide the -62 modifier issue. Following joinder

---

1. We note that the MMIS modifiers are set forth in defendant's regulations (see, 18 NYCRR 533.6 [e]) and the MMIS -62 modifier employs the term "radiology procedure" instead of "x-ray exam". However, since this change was made after the time relevant to this appeal, interpretation of the latter term is the sole subject of this appeal.

of issue, plaintiff moved for summary judgment seeking a declaration that the -62 modifier did not apply to multiple sonograms performed during single visits in 1986 and 1987. Defendant cross-moved for summary judgment but Supreme Court found in favor of plaintiff. A judgment was entered in plaintiff's favor granting the requested declaratory relief and held that defendant's claim for reimbursement in the amount of $265,748 was void. Defendant now appeals.

As acknowledged by the parties, the first sentence in the MMIS manual for radiology under the heading "General Information and Rules" states that "[t]hese rules apply to all procedure codes found in the Radiology Section of this Fee Schedule including * * * ultrasound * * * procedures". Rule 3 of the General Information and Rules states that when "multiple x-ray examinations are performed during the same visit", the MMIS -62 modifier must be used in billing Medicaid. As noted previously, the definition of the -62 modifier contained in the rules also makes reference to billing fee codes when multiple X rays are performed during the same visit. Based on this wording, defendant argues that it is reasonable to conclude that because the first sentence of the general rule states that the rules apply to all radiological procedures, the term "x-ray" must include ultrasound or sonograms. Moreover, defendant argues that because the MMIS -62 modifier is a part of the regulations which it enforces, its interpretation of the term "x-ray" in that modifier should be accorded substantial deference.

We cannot agree with defendant's arguments. With respect to the threshold issue of whether defendant's interpretation is entitled to judicial deference, we note that the term "x-ray" in the -62 modifier is not a technical term within defendant's area of expertise. Accordingly, this court is not required to give special deference to defendant's interpretation of the term (see, Matter of De Mayo v Rensselaer Polytech Inst., 74 NY2d 459, 462; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; Matter of Judd v Constantine, 153 AD2d 270, 272). As a result, we look instead to the well-settled rule of construction that words of common usage should be given their ordinary meaning unless it is clear that a different meaning was intended (see, Catlin v Sobol, 77 NY2d 552, 559; We're Assocs. Co. v Cohen, Stracher & Bloom, 65 NY2d 148, 151; Matter of Cabrini Med. Center v Axelrod, 116 AD2d 834, 836; cf., McKinney's Cons Laws of NY, Book 1, Statutes § 94).

Here, the terms "x-ray" and "sonogram" are, among the physicians to whom the MMIS fee schedules apply if not also among lay persons, commonly understood to mean two differ-

ent procedures.[2] Moreover, despite defendant's contention that the term "x-ray" really means all radiological services, it is significant that the language in defendant's definition of the MMIS -60 and -61 modifiers during the relevant period refers specifically to "radiological services" and does not simply state "x-rays". It therefore becomes apparent that the general phrase "radiological services", and not "x-rays", was meant to refer to all the radiological procedures named in the first sentence of the manual under "General Information and Rules", which explains why this general phrase is then repeated in two of the modifiers. This is confirmed by the use of the specific term "x-ray" in the -62 modifier, which then created an inference that the other procedures not named, such as sonograms or ultrasound, were intentionally omitted (cf., McKinney's Cons Laws of NY, Book 1, Statutes § 240). Accordingly, in the absence of proof that the term "x-ray" was meant to have any meaning other than its ordinary meaning, we find no basis for disturbing Supreme Court's determination.

LEVINE, J. (dissenting). We respectfully dissent. In focusing exclusively on the language of modifier "-62" in the "General Information and Rules" (hereinafter general rules) of the radiology section of the Medicaid Management Information System (hereinafter MMIS) Provider Manual, the majority, in our view, misses the point of defendant's rationale for applying the -62 modifier to plaintiff's charges for multiple sonograms performed on the same patient during a single visit. The applicable provision is rule 3 of the general rules of the radiology section of the MMIS Provider Manual. Rule 3 states in pertinent part: When multiple x-ray examinations are performed during the same visit, the charge shall be based on the greater fee plus 60% of the lesser fee(s). (See MMIS Modifier '-62'.)" The applicability of the -62 modifier thus arises out of its incorporation by reference in rule 3.

---

2. The dictionary defines the term "x-ray" as "a nonluminous electromagnetic ray or radiation of extremely short wavelength * * * capable of penetrating opaque or solid substances, ionizing gases and body tissues through which they pass or, by extended exposure, destroying tissue, and affecting photographic plates and fluorescent screens" (Webster's New World Dictionary of the American Language 1644 [20th college ed]). "Ultrasound" is defined as "the application of ultrasonic waves to therapy or diagnostics, as in deep-heat treatment of a joint or imaging of internal structures" (Random House Dictionary of the English Language 2050-2051 [unabridged 2d ed 1987]). A "sonogram" is "the visual image produced by reflected sound waves in a diagnostic ultrasound examination" (id., at 1820).

While rule 3 speaks in terms of multiple X-ray examinations, it is preceded by the introductory paragraph of the general rules of the radiology section of the MMIS Provider Manual which clearly specifies that "[t]hese rules apply to all procedure codes found in the Radiology Section of this Fee Schedule including diagnostic radiology, radiotherapy, nuclear medicine, *ultrasound* and CT scan procedures" (emphasis supplied). Thus, although an X ray and an ultrasound are concededly different radiological techniques, the MMIS Provider Manual makes them the same for purposes of the general rules governing Medicaid charges for radiological diagnostic services. Accordingly, there is nothing unreasonable in applying the billing restrictions for multiple, single-visit X-ray examinations contained in rule 3 to multiple, single-visit sonograms. Likewise, it seems obvious that, although rule 4 of the radiology general rules bars payment for "repeat x-ray examinations * * * required because of technical or professional error in the original x-rays", it would equally apply to repeat sonograms or CT scans required because of such errors. Indeed, to hold otherwise would be to eliminate any meaning or application of the previously quoted introductory provision of the radiology general rules, making "[t]hese rules" applicable to all such radiological procedures.

In our view, then, it was entirely reasonable for defendant to interpret rule 3 of the radiology general rules in the MMIS Provider Manual as applicable to plaintiff's charges for multiple, single-visit ultrasounds, by virtue of which he was limited to payment of 100% of the schedule fee for the most costly procedure he performed, plus 60% of the schedule fee for all other procedures performed on the patient during the same visit. The uncontested explanation of the purpose underlying this restriction on billing for multiple, single-visit radiological procedures, i.e., to reflect the fact that a radiologist achieves cost savings performing multiple procedures on the same patient in a single session, "since the patient is already present and prepared for the procedure", is contained in the affidavit of a bureau director in defendant's Division of Medical Assistance submitted on defendant's cross motion for summary judgment. The 60% billing restriction for procedures subsequent to the first procedure during a single visit attempts to "pass some of [the] savings [in the radiologist's time and labor] on to the Medicaid program". The affiant also states, without contradiction in the record, that the foregoing rationale for rule 3 and the MMIS -62 modifier applies with

equal force "regardless of whether the radiologist is using x-rays or ultrasound".

When, as here, the interpretation by the administrative agency of its own rules and regulations is not irrational or unreasonable, it should be upheld (see, *Matter of Johnson v Joy,* 48 NY2d 689, 691). Repeatedly, the courts have deferred to the administrative construction of the agency's rules when, as in the instant case, that interpretation is not irrational or contrary to the governing statute (see, *Matter of Spizzirro v Ayala,* 176 AD2d 738, 739; *Matter of Lipes v State of New York, Div. of Hous. & Community Renewal, Off. of Rent Admin.,* 174 AD2d 571, 572; *Matter of Silver Lake Nursing Home v Axelrod,* 156 AD2d 789, 790; *Matter of Fiorillo v New York State Dept. of Envtl. Conservation,* 123 AD2d 151, 153, *appeal dismissed* 70 NY2d 641). Moreover, as demonstrated by the aforementioned affidavit of the bureau director of defendant's Division of Medical Assistance, application of the rules here involves the agency's knowledge and understanding of underlying radiological practices (see, *Matter of Fiorillo v New York State Dept. of Envtl. Conservation, supra).* Contrary to the majority's position, the deference due an administrative agency's interpretation of its own rules and regulations is not limited to instances where the language under review is technical terminology within the agency's expertise. At least in part, deference in interpretation is accorded the agency as drafter of the regulation "because the administrators are likely to know more about the background of intent that went into the regulation" (2 Davis, Administrative Law § 7:22, at 107 [2d ed]). Accordingly, an agency's interpretation of its own regulations is entitled to even more deference than its interpretation of the statute it has the responsibility of enforcing (see, *Udall v Tallman,* 380 US 1, 16; *Bowles v Seminole Rock Co.,* 325 US 410, 413-414; see also, *Lyng v Payne,* 476 US 926, 939; *Immigration Serv. v Stanisic,* 395 US 62, 72).

Inasmuch as application of the billing restrictions of rule 3 of the general rules of the radiology section of the MMIS Provider Manual to multiple, single-visit ultrasound procedures is consistent with the purpose of that rule and it has not been shown to conflict with any of the provisions of the MMIS Reimbursement Schedule or Provider Manual, defendant's interpretation should be upheld (see, *Matter of Kaufman v Sarafan,* 59 NY2d 855, 857).

For all the foregoing reasons, we would reverse Supreme

Court's judgment, grant defendant's cross motion for summary judgment and make a declaration in its favor.

MIKOLL, J. P., and CASEY, J., concur with HARVEY, J; LEVINE and CREW III, JJ., dissent in a separate opinion by LEVINE, J.

Ordered that the judgment is affirmed, with costs.