■ In the Matter of BRUCE HERZOG, Petitioner, v MARY JO BANE, as Commissioner of the New York State Department of Social Services, Respondent. [600 NYS2d 343] —Mercure, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which, *inter alia,* excluded petitioner from participating in the Medicaid program for a period of five years.

Petitioner is a radiologist licensed to practice medicine in New York and a duly enrolled Medicaid provider. The State Department of Social Services (hereinafter DSS) performed an audit on a random sample of petitioner's records for the period of August 1, 1987 through August 31, 1989. On May 29, 1990 and July 30, 1990, DSS issued notices of proposed action and interim audit reports that essentially charged that petitioner made false claims *(see,* 18 NYCRR 515.2 [b] [1] [i] *[b]),* maintained unacceptable recordkeeping *(see,* 18 NYCRR 515.2 [b] [6]), furnished or ordered medical care, services or supplies substantially in excess of the client's needs *(see,* 18 NYCRR 515.2 [b] [11]), and furnished medical care, services or supplies that failed to meet professionally recognized standards for health care *(see,* 18 NYCRR 515.2 [b] [12]). The gravamen of these charges was DSS' claim that petitioner provided and billed for both a comprehensive sonogram of a patient's abdo-

men and retroperitoneum areas and a single organ sonogram of a patient's kidneys, gall bladder, spleen or other organs, on the same visit.

On September 26, 1990, DSS issued a notice of agency action excluding petitioner from participation in the Medicaid program for five years and seeking restitution of $443,974 plus interest. Petitioner requested an administrative hearing which was held in March 1991 and July 1991. Ultimately, it was determined that petitioner be excluded from the Medicaid program for a period of five years and the finding that petitioner overbilled DSS was reduced to $431,569. Petitioner thereafter commenced this CPLR article 78 proceeding to challenge this determination which was then transferred to this Court pursuant to CPLR 7804 (g).

Initially, we address petitioner's contention that his due process rights were violated because the four charges against him failed to sufficiently specify the unacceptable practices which he was alleged to have committed. We have examined each of the charges in turn and agree with petitioner that the notice given him with respect to the charge that his conduct allegedly fell below acceptable medical standards was deficient. Specifically, petitioner was charged with violating 18 NYCRR 515.2 (b), which states:

"An *unacceptable practice* is conduct which constitutes fraud or abuse and includes the * * *

"(12) [f]ailure to meet recognized standards. Furnishing medical care, services or supplies that fail to meet professionally recognized standards for health care or which are beyond the scope of the person's professional qualifications or licensure" (emphasis in original).

While a plain reading of this charge appears to indicate that petitioner's ability to furnish medical care is being called into question, it was made abundantly clear at petitioner's hearing that DSS was alleging that petitioner fell below medical standards in his *recordkeeping,* as opposed to the quality of the services actually performed. This distinction was made quite clear when Helen Morehouse, the peer review expert called by DSS to support its claim of deficient medical standards *(see,* 18 NYCRR 519.18 [d] [2]), conceded that she never looked at petitioner's video tapes of the sonograms performed because it was her understanding she was only to comment on petitioner's billing practices, not his skill or capacity as a radiologist. Given the fact that DSS failed to more specifically apprise petitioner of the actual conduct he

was accused of *(see, Matter of Bigando v Heitzman,* 187 AD2d 917, 918; *Matter of Benson v Board of Educ.,* 183 AD2d 996, 997, *lv denied* 80 NY2d 756), it appears that the medical standards charge was nothing more than a repetition of the unacceptable recordkeeping charge *(see,* 18 NYCRR 515.2 [b] [6]). Consequently, because the charge appears to be wholly cumulative and there is no proof whatsoever that DSS was in fact challenging petitioner's skill as a radiologist, the failure to meet recognized standards charges must be dismissed.

Turning now to petitioner's claim that substantial evidence does not support respondent's findings of guilt as to the remaining charges, we agree with petitioner that the evidence does not support the findings that petitioner allegedly over-billed patients (18 NYCRR 515.2 [b] [1] [i]) and performed excess services (18 NYCRR 515.2 [b] [11]) by fraudulently billing for both comprehensive and individual sonograms per-formed at a single patient visit. In our view, the evidence on the record submitted by DSS fails to link petitioner's conduct to a specific violation of DSS' regulations. Specifically, an examination of the Medicaid provider manual for the relevant period even as revised* generally lists both comprehensive and single-organ sonogram codes, mentions follow-up sono-grams and appears to provide for reimbursement for both procedures without stated limitations on when they are to be conducted. Petitioner maintains that DSS provided him with no notice of a change in billing policy that would prohibit individual organ sonograms in addition to inclusive sonograms during a single visit. Significantly, Robert Davi, a nonphysi-cian Principal Social Services Management Specialist for DSS who oversaw the audit of petitioner's records, essentially supported petitioner's claim by conceding that changes in DSS policy regarding such billing actually occurred in February 1988, midway during petitioner's audit period. Davi also testi-fied that he was unaware of whether notice of this new policy was ever given to referring physicians who ordered sonograms from providers such as petitioner and that the policy was "cloudy". Even more significant, however, both Davi and Morehouse admitted that in some cases it was appropriate for multiple sonograms to be performed on a single visit depend-ing on the circumstances.

While there was proof that petitioner submitted bills for

---

* The Medicaid Management Information System reimbursement fee schedule was amended several times during the course of petitioner's audit period, but we note that the section pertaining to radiology services is generally set forth in DSS' regulations in 18 NYCRR 533.6.

both a full and single organ sonogram on numerous occasions, this Court has stated that violations should not be based on the unpromulgated interpretation of DSS' own policy *(see, Berger v New York State Dept. of Social Servs.,* 181 AD2d 12). This is especially so in this case because sonograms actually performed by petitioner were never examined to find out if they were medically necessary. In fact, the crux of the testimony of Davi and Morehouse was not that the sonograms were actually unnecessary, only that there was no way of telling based on deficiencies in petitioner's recordkeeping. Consequently, we conclude that the charges of billing false claims and performing excess services were not substantiated on this record.

Finally, we conclude that there was sufficient evidence to sustain the charge that petitioner failed to provide proper documentation for claims relating to some 69 services. At the hearing, there was ample testimony from Davi and Morehouse that petitioner's records were either missing or deficient in several key aspects. As for the issue of penalty for the sustained charge, we note that the penalty imposed against petitioner was not assessed separately as to each charge. Accordingly, this matter must be remitted to respondent for a reconsideration of the penalty to be imposed for the remaining sustained charge of improper recordkeeping *(cf., Matter of Sharma v Sobol,* 188 AD2d 833).

All other issues raised by petitioner and not specifically addressed herein have been found to be without merit or rendered academic by our decision herein.

Weiss, P. J., Mahoney and Casey, JJ., concur. Adjudged that the determination is modified, on the law, with costs to petitioner, by annulling so much thereof as found that petitioner made false claims, provided excess services and failed to meet professional standards, and imposed a penalty; matter remitted to respondent for redetermination of the penalty to be imposed; and, as so modified, confirmed.