■ In the Matter of JOSEPH T. MECCA, Petitioner, v MICHAEL DOWLING, as Commissioner of the New York State Department of Social Services, Respondent. [620 NYS2d 584] —Mikoll, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which, *inter alia,* excluded petitioner from participation in the Medicaid program for a period of five years.

Petitioner, a physician and radiologist licensed to practice medicine in New York, was an enrolled Medicaid provider approved by the Department of Social Services (hereinafter DSS) at all times at issue in this proceeding. In addition to his regular employment at a hospital, petitioner did consulting work which consisted of interpreting and reporting sonogram studies of patients provided to him by a proprietary company doing business as New York Ultrasound (hereinafter Ultrasound). Treating physicians would refer patients to Ultrasound for diagnostic ultrasonography and technicians who were employees of Ultrasound would do the sonogram studies and record them on videotape. Petitioner would interpret the resulting sonogram studies and submit a medical report based upon the organs projected in the studies. Ultrasound billed Medicaid under petitioner's provider number. Petitioner received approximately $12 to $15 of the fees billed for each of the organs studied and the remainder was retained by Ultra-

sound as payment for administrative and technical activities performed.

This proceeding arose from two audits DSS performed involving petitioner's Medicaid billings. The first audit (hereinafter the modifier-62 audit) reviewed payments made to petitioner during 1986 and 1987. Modifier-62 is a number required to be added to billing codes for certain radiological procedures which reduces payments for those procedures by 40%. In a notice dated July 12, 1988, DSS informed petitioner of a final audit report indicating that petitioner received overpayments under the Medicaid program in the sum of $115,164 based upon his alleged failure to properly utilize the modifier-62 code, as described in DSS' Medicaid Management Information System (hereinafter MMIS) manual. Petitioner requested an administrative hearing to challenge the results of this audit.

The second audit performed by DSS (hereinafter the billing audit) reviewed petitioner's Medicaid patient records and billing procedures for the payment period beginning March 1, 1985 through December 31, 1987. After issuance of a notice of proposed agency action and draft audit report and review of petitioner's responses, DSS sent petitioner a notice of final agency action and final audit report on January 30, 1993. The notice advised petitioner that DSS had determined to exclude him from participation in the Medicaid program for five years and to recover additional overpayments totaling $213,709 with interest. DSS found that, in addition to generating overpayments, petitioner committed the unacceptable practices of submitting false claims, unacceptable record keeping, furnishing excessive services to Medicaid patients and failing to meet recognized medical standards in the treatment of Medicaid patients.

The principal overcharge in the billing audit involved petitioner's billing practices with respect to abdominal sonograms. Pursuant to the billing fee code in effect during the audit period, a complete (or comprehensive) abdominal sonogram, which examined all of the abdominal organs, was reimbursed at a rate of $60 per study. Inclusive sonogram studies of an individual abdominal organ, such as the liver, were also reimbursed at the rate of $60 per study. There is no difference in the quality or quantity of the work performed in a complete or comprehensive abdominal sonogram as compared to an inclusive individual sonogram of one of the five abdominal organs. The audit found that of the 409 claims of improper practices, there were 385 instances where petitioner, rather than billing Medicaid for allegedly indicated comprehensive

sonogram studies, billed for multiple inclusive sonograms of certain individual abdominal organs done at a single visit.

A hearing before an Administrative Law Judge (hereinafter ALJ) was held on eight days beginning in May 1990 and concluding on October 2, 1991. DSS initially reduced the amount of restitution demanded regarding the billing audit to $212,849 but, following issuance of a recommended decision by the ALJ, respondent issued a final decision which, *inter alia,* disallowed the modifier-62 audit on the authority of this Court's decision in *Berger v New York State Dept. of Social Servs.* (181 AD2d 12). As a result, all funds collected from petitioner pursuant to the modifier-62 audit were directed to be applied to his obligations under the billing audit. Respondent also concluded that in the second audit petitioner had incorrectly billed in all 409 claims disallowed by DSS. Significantly, respondent overruled the ALJ's denial of a hearing motion by DSS to amend the billing audit notice to petitioner, thereby allowing recovery by DSS of the total Medicaid payments made for disallowed services unreduced by the modifier-62 audit. Thus, the total overpayments against petitioner were amended to be $351,545.

Respondent found that petitioner had, in 385 instances, incorrectly billed for sonograms of individual organs instead of for complete abdominal surveys, and, in nine instances, incorrectly billed for tests not ordered by the referring physicians. Consequently, it was determined that petitioner was guilty of unacceptable practices as set forth in 18 NYCRR former 515.2 (b) (1) and (2). Further, respondent found that petitioner failed to keep required and adequate records as to 15 claims *(see,* 18 NYCRR former 515.2 [b] [11], [12]) and, thus, petitioner could not disprove the charge that he had also committed the unacceptable practice of billing for unfurnished care concerning these claims (18 NYCRR former 515.2 [b] [1], [2]). Nevertheless, respondent concluded that DSS had not established that petitioner had failed to meet recognized professional standards in providing medical care to Medicaid patients (18 NYCRR former 515.2 [b] [20]). As a penalty, petitioner was excluded from participation in the Medicaid program for five years and ordered to pay the assessed amount, as amended. Petitioner then commenced this CPLR article 78 proceeding challenging the determination.

The determination should be modified by reducing the monetary penalty to $212,849 plus interest. We find that respondent improperly amended the final notice against petitioner so as to increase the overpayment to be recouped in violation of

petitioner's due process rights *(see, Matter of Ginny Rest. v State Liq. Auth.,* 203 AD2d 973; *see also, Matter of Bryant v Coughlin,* 77 NY2d 642, 649-650). Petitioner's contention that DSS deprived him of his due process rights by a posthearing amendment increasing the amount of claimed overpayments in the original notice for the billings is persuasive. Respondent's own regulations do not authorize such amendment. After determination of a provider's unacceptable practice or overpayment, a written notice is to be sent to the provider and the provider is then allowed time to respond (18 NYCRR former 515.6 [a] [1], [2]). After the material is reviewed and a determination made that an impropriety occurred, the regulations require written notice to the provider advising, *inter alia,* of the "amount of overpayment determined" (18 NYCRR former 515.6 [b] [1]). There is no provision allowing the amount to be increased based on circumstances arising at the hearing *(see, e.g., Matter of Sulzer v Environmental Control Bd.,* 165 AD2d 270, 280). Thus, the amount of the billing audit should be reduced to the amount originally stated in the January 1990 notice, as later reduced *(see,* 18 NYCRR 519.24), namely $212,849.

We reject petitioner's argument that he was deprived of proper notice of alleged wrongdoing because the January 1990 notice incorrectly cited 18 NYCRR 515.2 (b) as it was amended after the relevant time period of the audit instead of the regulation in use at the time. This argument was not raised at the hearing and was thus waived *(see, e.g., Matter of Dotson v Coughlin,* 191 AD2d 912, 913, *lv denied* 82 NY2d 651). In any event, the claimed defect did not deprive petitioner of the type of notice required in administrative proceedings, i.e., notice "reasonably specific, in light of all the relevant circumstances" *(Matter of Block v Ambach,* 73 NY2d 323, 333). Here, although the amended regulation involved was not properly cited, petitioner has failed to show that he was prejudiced by the error.

Petitioner's contention that policies that were not promulgated were employed against him is not supported by the record. Petitioner relies on this court's prior decision in *Matter of Herzog v Bane* (195 AD2d 787) for support in arguing that the MMIS manual listed billing codes for both complete and inclusive sonograms with no directions regarding when to charge for either. *Herzog* held, *inter alia,* that DSS erred in charging a physician with overbilling patients and performing excess services solely because he billed for both comprehensive and inclusive sonograms performed at a single patient visit

*(supra,* at 789). In *Herzog,* however, the policy of disallowing billing to both comprehensive and inclusive sonograms performed on the same day was formulated after the services had been performed and had not been clearly disseminated to practitioners *(supra,* at 789-790). This Court noted there that the blanket prohibition was applied without any review of the sonograms for the purpose of ascertaining the medical necessity therefor *(supra,* at 790).

Here, the situation is different. Petitioner's claims were not disallowed because he charged for both complete and inclusive sonograms or because he violated DSS' new policy of never allowing payment for inclusive sonograms. Rather, here there was expert medical testimony indicating that petitioner charged for procedures not medically indicated, thereby connecting petitioner's conduct to the alleged violation of the regulations. The regulations as to billing were not too vague as to what to bill when a complete comprehensive survey is medically indicated. Physicians should use common sense in their billings. Significantly, in this case, there was no evidence indicating that there was any need for inclusive sonograms in the 385 disallowed claims.

Petitioner's argument that the determination concluding that he committed certain unacceptable practices is not supported by substantial evidence in the record is without merit. Regarding the 15 instances in which petitioner was held to have engaged in the unacceptable practices of inadequate record keeping and billing for unfurnished care (18 NYCRR former 515.2 [b] [1], [2], [11], [12]), in 10 instances the requisition from the referring physician, hard copy of the sonogram or petitioner's report to the referring physician were missing. In the remaining five instances, no documentation was available to demonstrate that the services billed were actually performed. In response, petitioner casts blame on Ultrasound for any deficiencies and when asked at the hearing why this documentation was not provided, answered only that he did not "recall, offhand". Thus, we find that the determination of guilt relating to these 15 charges of unacceptable practices is more than adequately supported by the record *(see, Matter of Roggemann v Bane,* 206 AD2d 622; *Matter of Louis v Dowling,* 203 AD2d 742; *Matter of Herzog v Bane,* 195 AD2d 787, *supra).*

Concerning the nine instances where it was found that petitioner was guilty of the unacceptable practice of making claims for medically unnecessary care contrary to the provisions of 18 NYCRR former 515.2 (b) (1) and (2) for billing tests not ordered by the referring physician, petitioner offered little,

if any, defense other than arguments that may fairly be termed specious. There is no question that petitioner's provider number was used to make the claims and, consequently, he was responsible for any irregularities in its use by his agents.

Turning to the 385 instances in which it was concluded that petitioner improperly billed for two or more inclusive sonogram studies of various abdominal organs for a single patient on the same day when he should have billed for a single complete/comprehensive abdominal study as to each patient in accord with 18 NYCRR former 515.2 (b) (1) and (2), there likewise was substantial evidence to support the conclusion. Such evidence consisted of the testimony of the peer review experts for DSS, Frank Vogel and Murray Rosenzweig, that in each of the cases they reviewed petitioner should have performed and billed for a comprehensive sonogram study based upon information provided by the referring physician, and not for inclusive individual organ studies. Petitioner and his expert medical witness, Joan Goodman, conceded that, according to good medical practice, as to each of the cases studied in the billing audit, a complete abdominal sonogram should have been performed because the original request for the sonogram from the referring physician listed only generalized or vague complaints or symptoms, such as abdominal pain. Accordingly, contrary to the factual circumstances existing in *Matter of Herzog v Bane* (195 AD2d 787, *supra),* petitioner's conduct was connected "to a specific violation of DSS' regulations" *(supra,* at 789).

Finally, petitioner's contention that the penalty of exclusion for five years and restitution of overpayments is unjustified and an abuse of discretion is rejected, except as to the reduction of the amount of monetary restitution only, which, for reasons previously stated, should be reduced to $212,849. The determination reveals that consideration was given to the factors enumerated in 18 NYCRR 515.4 (b). It has not been demonstrated that the penalty imposed is so disproportionate to the offense as to be shocking to one's sense of fairness *(see, Matter of Tobon v Bane,* 192 AD2d 851, 855; *Matter of Camperlengo v Perales,* 120 AD2d 883, 884, *lv denied* 68 NY2d 606).

Cardona, P. J., Mercure, Casey and Yesawich Jr., JJ., concur. Adjudged that the determination is modified, without costs, by reducing the monetary penalty to $212,849 plus interest, and, as so modified, confirmed.