■ In the Matter of RYE PSYCHIATRIC HOSPITAL CENTER, INC., Petitioner, v RICHARD C. SURLES, as Commissioner of the Office of Mental Health of the State of New York, Respondent. [628 NYS2d 830] —Spain, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which reduced petitioner's hospital bed capacity.

Petitioner is a hospital for the mentally disabled located in the City of Rye, Westchester County; its first operating certificate was granted in 1971 for an operating capacity of 33 beds. In 1973 petitioner was granted an operating certificate for 41 beds. Effective September 22, 1975, the Office of Mental Health (hereinafter OMH) revised its regulations for operating certification introducing minimum space requirements (see, 14 NYCRR part 77). The 1975 regulations, currently in effect, require that, inter alia, each facility provide 80 square feet of bedroom space per patient for multiple bedrooms and 100 square feet for individual bedrooms (14 NYCRR 77.8 [a]). A facility seeking certification may seek a 15% waiver of this requirement if it meets specific support and service space requirements of 105 square feet per patient, consisting of 50 square feet of program space, 20 square feet of indoor recreational space, 20 square feet of lounge space and 15 square feet of dining space (14 NYCRR 77.7 [b]; 77.8 [a] [4]; [f], [i]). The regulations also require each facility to prepare and submit to OMH a site and space utilization plan (hereinafter SASUP), which sets forth its compliance with the foregoing requirements (14 NYCRR 77.2). By memorandum dated December 31, 1975 petitioner was notified of these new regulations. Petitioner did not submit its first SASUP until 1978; in response OMH notified petitioner that its SASUP included plans which were substandard and suggested alternatives for meeting the support space requirements.

Between 1978 and 1988 OMH corresponded with petitioner regarding its application and continued to attempt to obtain from petitioner a SASUP which was in compliance with its regulations.[1] In 1988 OMH sent a report to petitioner which, inter alia, noted various regulatory requirements with which petitioner had failed to comply. Thereafter, in a letter dated November 29, 1990, OMH notified petitioner that, inter alia,

---

1. Petitioner complains that OMH was extremely slow in its responses to petitioner's submissions; however, despite some lengthy delays, some of which are attributable to OMH and some to petitioner, OMH permitted petitioner to continue to operate as a 41-bed facility. Petitioner has shown no prejudice resulting from any delay caused by OMH.

based on petitioner's submissions and the information gathered from a 1988 OMH site visit, petitioner only had sufficient support space for an operating capacity of 34 beds. This determination was based on OMH's preliminary conclusion that 440 square feet of program space, consisting of a side porch (250 square feet) and an entry porch (190 square feet), were not enclosed in weathertight construction; that 303 square feet of lounge space, consisting of a nurse's lounge (75 square feet) and dining room (228 square feet), was devoted to staff use; and that 523 square feet of annex recreation space was not enclosed in weathertight construction. Essentially, OMH disallowed that portion of petitioner's proposal which designated enclosed patios as program or lounge space because it was only available for seasonal use. Additionally, it disallowed credit claimed by petitioner for staff space in the main building dining area and a nurses' lounge based upon insufficient evidence that these spaces were being used for planned patient program activities.[2]

Despite numerous requests by OMH, petitioner did not submit a complete SASUP which met the requirements of 14 NYCRR 77.2 until February 1991, which OMH and its architect concluded offered no new information with regard to petitioner's support space capacity. In May 1992, OMH issued a six-month operating certificate for 34 beds and notified petitioner of its right to challenge its determination; petitioner submitted a request for a hearing. A hearing date was set and a hearing was held, after which the Hearing Officer concluded that while the annex recreational space (523 square feet) and 90 square feet of the side porch were, in fact, weathertight and should be allowed, the rest of OMH's determinations were supported by the record and petitioner had therefore failed to demonstrate sufficient support space to permit an operating capacity of 41 beds. Petitioner objected to these conclusions. In February 1994, respondent issued a determination reversing that part of the Hearing Officer's findings which credited the annex space and side porch areas toward petitioner's support space requirements, and upheld the remaining portions of the Hearing Officer's determination. Thereafter, petitioner commenced this CPLR article 78 proceeding in Supreme Court, which was transferred to this Court pursuant to CPLR 7804 (g).

2. Petitioner needed 4,305 square feet of support space to achieve an operating capacity of 41 beds. Petitioner, in its submissions, claimed 4,897 square feet of support space. However, OMH disallowed 1,266 square feet of that submitted by petitioner and approved only 3,631 square feet, thereby reducing petitioner's operating capacity to 34 beds.

Petitioner asserts that respondent's determination violated lawful procedure in that the OMH notice of intent failed to adequately inform petitioner of the grounds for its decertification of bed space, respondent improperly altered the findings of the Hearing Officer and the Hearing Officer improperly placed the burden of proof on petitioner.

Respondent has a duty to provide petitioner with a notice of charges which "reasonably apprise the accused of the claim being made so that an adequate defense may be mounted" (*Matter of Benson v Board of Educ.*, 183 AD2d 996, 997, *lv denied* 80 NY2d 756; *see, Matter of Fitzgerald v Libous*, 44 NY2d 660, 661). However, due process does not require unreasonably detailed notice and the failure of an administrative agency to include every factual basis for the charges contained in its notice to a petitioner will not necessarily invalidate an administrative proceeding (*see, Matter of Town of Brunswick v Webb*, 145 AD2d 844, 845). Rather, the notification provided must be "reasonably specific, in light of all the relevant circumstances, to apprise the party whose rights are being determined of the charges against [it] * * * and to allow for the preparation of an adequate defense" (*Matter of Block v Ambach*, 73 NY2d 323, 333 [citation omitted]). The notice provisions under the Mental Hygiene Law require, *inter alia*, a general description of the reasons for the proposed action and a statement of petitioner's right to request a hearing (*see,* Mental Hygiene Law §§ 31.05, 31.16; 14 NYCRR 503.4 [a]; 573.4). When a request has been made, OMH is required to provide written notice of the hearing, including, "a reference to the particular sections of the statutes and regulations involved, if any" (14 NYCRR 503.4 [b] [2] [iii]; *see,* Mental Hygiene Law § 31.16 [c]).

We conclude that OMH's letters dated May 27, 1992 (which makes reference to OMH's letter dated November 29, 1990) and October 7, 1992 provided petitioner with sufficient notice to apprise it of the nature of the deficiencies alleged so as to permit it to prepare an adequate defense (*see, Matter of Turco v Board of Educ.*, 211 AD2d 861, 862). In both its notice of intent and its notice of hearing, OMH cited as the basis for its determination petitioner's ongoing lack of compliance with the requirements of 14 NYCRR part 77, including the fact that petitioner would not be credited with support space which is only available for seasonal use. The appendices attached to the letters of May 27, 1992 and November 29, 1990 specified these seasonal use spaces as an entry porch, a side porch and an annex recreation area not enclosed by weathertight construction.

14 NYCRR part 77 also requires that the construction of a

hospital for the mentally ill conform to the requirements of the State Building Construction Code (*see*, 9 NYCRR parts 600-1350) as well as all local codes and ordinances (*see*, 14 NYCRR 77.3). Petitioner offered evidence during the hearing to establish that 90 out of the 250 square feet of the side porch area as well, as the annex recreational area, were fully enclosed and equipped with heating and lighting and were therefore available for year-round use as permanent structures. However, there is nothing in the record which indicates that petitioner previously provided this information to OMH in either its SASUP or any other submission. The record clearly does show that during the time period covered by the certification process, petitioner was repeatedly admonished by OMH that it was required to comply with all aspects of 14 NYCRR part 77, including filing and updating its SASUP, remaining in compliance with local codes and ordinances, and obtaining prior approval for construction and modification as required in 14 NYCRR part 51. On cross-examination it was revealed that no building or zoning permits were obtained for these improvements; additionally, petitioner's architect admitted that the improvements were probably not in compliance with the local building code.

Based upon the foregoing evidence we are satisfied that respondent properly determined, on his review of the record, that petitioner failed to establish that either the construction or the heating and lighting of these areas complied with 14 NYCRR 77.3 and, on that basis, modified the Hearing Officer's conclusions and disallowed these areas as support areas. Furthermore, since it was petitioner which first raised these improvements at the hearing, it cannot now claim prejudice. Moreover, petitioner did not raise any objection at the hearing to its lack of notice on this issue and, therefore, petitioner has waived this argument for the purpose of judicial review (*see*, *Matter of Mecca v Dowling*, 210 AD2d 821, 824; *Matter of Dotson v Coughlin*, 191 AD2d 912, 913, *lv denied* 82 NY2d 651).

We further conclude that respondent's determination is supported by substantial evidence. In a proceeding pursuant to CPLR article 78, the findings of fact by an administrative hearing officer are conclusive and will be sustained on review where the evidence in the record is of sufficient quantity and quality that "a reasonable mind [would] accept [it] as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 180; *see*, *Matter of Gray v Adduci*, 73 NY2d 741, 743; *Matter of Di Maria v Ross*, 52 NY2d 771, 772; *Matter of Clin Path v New York State Dept. of Social Servs.*, 193 AD2d 1034, 1036).

There is no dispute as to the disallowance of 190 square feet of entry porch for use as a lounge, as it was conceded by petitioner's architect that this area is not enclosed. Additionally, while petitioner disputes respondent's determination that 75 square feet of lounge space and 228 square feet of lounge/dining space was disallowed because it is devoted to staff use, the record shows, as the Hearing Officer found, that this determination was supported by the presence of a "personnel" sign, staff time clock and office equipment in the former area, as well as the fact that staff were seen eating in the latter area during site visits and that OMH's architect was told that this was a staff dining area. Further, OMH stated that it does not double count areas such as these in computing support space and, in any event, the regulations permit the dual use of space only upon respondent's approval (see, 14 NYCRR 77.7 [b] [2] [i]).

Accordingly, we conclude that respondent's determination to limit petitioner's operating capacity to 34 beds, based upon lack of adequate support space required by 14 NYCRR part 77, is supported by substantial evidence.

We have considered petitioner's remaining contentions and find them to be without merit.

Cardona, P. J., White, Casey and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.