■ In the Matter of ABRAHAM LOCK, Petitioner, v NEW YORK DEPARTMENT OF SOCIAL SERVICES, Respondent. [632 NYS2d 300] —Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which, *inter alia*, excluded petitioner from participating in the Medicaid program for a period of one year.

Petitioner, a physician specializing in internal medicine, has been a participating provider in the Medicaid program since 1987. An audit by respondent of petitioner's records for parts of 1988 and 1989 disclosed instances in which petitioner's recordkeeping did not meet program requirements. After reviewing petitioner's response to a notice of proposed agency action and draft audit report, outlining the deficiencies and the disciplinary steps respondent planned to take against petitioner, respondent issued a final determination which sought restitution of alleged overpayments and excluded petitioner from participating in the Medicaid program for five years. Following a hearing, the designated Administrative Law Judge (hereinafter ALJ) concluded that petitioner had engaged in unacceptable practices and that his errors had resulted in $114,803 in overpayments. Repayment in that amount was ordered and petitioner was excluded from the program for one year. This proceeding, in which petitioner seeks annulment of the determination, ensued.

After considering petitioner's various arguments, we are of the view that respondent's determination should be confirmed. First, petitioner contends that the ALJ erred, as a matter of law, in that he made no explicit finding that petitioner committed fraud, abuse or other intentional misconduct, yet sanctioned him for engaging in "unacceptable practices". Petitioner offers no authority to support his interpretation of the somewhat ambiguous regulatory language defining such practices (*see*, 18 NYCRR 515.2). In our view, respondent's position—that the general language introducing the list of proscribed activities in subdivision (b) of 18 NYCRR 515.2 (captioned *"Conduct included"*) is intended to establish that the types of conduct enumerated therein are deemed to be "fraud or abuse", and not merely to indicate that the listed activities are sanctionable if they *also* meet the definition of fraud or abuse—is more reasonable, given the general regulatory scheme.\* Moreover, the title of that subdivision provides some indication that it is intended to expand, rather than diminish, the scope of the preceding general definition of "Unacceptable practices" (*see*, 18 NYCRR 515.2 [a]) (which plainly encompasses the violations with which petitioner was charged); indeed, adoption of the narrow construction urged by petitioner would render that definition superfluous. Accordingly, the ALJ's finding that petitioner's recordkeeping did not comport with the applicable standards, if supported by substantial evidence, affords sufficient basis for the imposition of sanctions and the ordering of restitution (*see, Matter of Mecca v Dowling*, 210 AD2d 821, 826, *lv denied* 85 NY2d 809).

On the issue of whether the record evidence justifies that finding, petitioner submits that it was error to conclude that he had engaged in "unacceptable recordkeeping" because of his failure to record an "interpretation and report" of the results of electrocardiogram (hereinafter EKG) tests he had

---

\* 18 NYCRR 515.2 reads in pertinent part as follows:

"515.2 Unacceptable practices under the medical assistance program.

"(a) *General.* An *unacceptable practice* is conduct by a person which is contrary to:

"(1) the official rules and regulations of the department;

"(2) the published fees, rates, claiming instructions or procedures of the department; * * *

"(b) *Conduct included.* An *unacceptable practice* is conduct which constitutes fraud or abuse and includes the practices specifically enumerated in this subdivision."

Paragraph (6) of 18 NYCRR 515.2 (b) is captioned and defines "Unacceptable recordkeeping".

performed, as directed by the Medicaid Management Information System Provider Manual (hereinafter MMIS Manual), when he had stapled the EKG strips to the patients' record. Since this procedure assertedly accords with accepted medical practice and, in his view, satisfies the regulatory mandate that a "notation" be made (*see*, 18 NYCRR 540.7 [a] [10] [viii]), petitioner maintains that the more detailed, and allegedly contradictory, requirements imposed by the MMIS Manual must be disregarded. We are of the view, however, that the pertinent section of the MMIS Manual neither contradicts, nor adds significantly to, the conditions for payment set forth in the regulation (*compare, Matter of New York State Clinical Lab. Assn. v Kaladjian*, 194 AD2d 189, 193, *affd* 85 NY2d 346); rather, it represents an interpretation or clarification of the term "notation", reasonably designed to meet one of the aims of the regulation, which is to ensure that a provider has indeed reviewed the test results before billing for the service. Inasmuch as petitioner has not demonstrated that the MMIS Manual section is invalid, it must be considered an "official directive[ ] of the department", with which he is contractually obligated to comply (*see*, 18 NYCRR 504.3 [i]). That being the case, petitioner's admission that he wrote nothing in the patients' records to indicate his conclusion after reviewing the EKG tracings, a necessary prerequisite to obtaining reimbursement for performing such a test, provides a sufficient basis for the ALJ's decision upholding the charges of unacceptable recordkeeping stemming from the EKG tests.

Of petitioner's remaining arguments, the only one meriting comment is his claim that he was improperly prevented from presenting evidence in support of his challenge to respondent's audit methodology. Although petitioner correctly notes that he mentioned the size of the "universe" of claims onto which the audit results were projected in his response to the draft report, a review of the entire response reveals that this comment—that the total number of claims "appears to be substantially overstated"—was made in the context of a challenge to the method used for deriving the audit sample. At the hearing, however, petitioner attempted to challenge an entirely different aspect of the methodology. That argument, not having been raised in the response, was properly excluded from the issues considered at the hearing (*see, Matter of Enrico v Bane*, 213 AD2d 784, 786). Beyond that, even if it had been fully credited, the evidence petitioner sought to introduce (while perhaps substantiating his claim that he had not ordered all of the services included in the "universe") would not be sufficient, in the absence of expert testimony linking that fact to a flaw

in the audit methodology, to overcome the presumption of validity attaching thereto (see, supra, at 786).

And, having been duly notified of all of the issues to be addressed in the hearing and accorded a full and fair opportunity to contest the bases for respondent's action, including matters raised in response to his objections to the draft report, petitioner cannot be said to have been treated unfairly or deprived of due process (see, 18 NYCRR 519.10 [c]; 519.18 [a]; compare, Matter of Mecca v Dowling, 210 AD2d 821, 824, supra).

Cardona, P. J., Mikoll, Mercure and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.