■ In the Matter of FRANK GAROFALO, Petitioner, v MICHAEL J. DOWLING, as Commissioner of the New York State Department of Social Services, et al., Respondents. [635 NYS2d 986] —Casey, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Social Services which, inter alia, excluded petitioner from participation in the Medicaid program for five years.

Petitioner, a licensed physician practicing radiology, was a participating provider in the Medicaid program during the time relevant to this proceeding. From 1986 through mid-1988, petitioner provided consulting services by rendering written evaluations to four different companies which performed sonograms at the written request of the primary care physicians.

Petitioner's agreement with these companies required the companies to bill Medicaid for the services rendered using petitioner's provider number. Between January 1986 and December 1987, respondent Department of Social Services performed two separate audits of petitioner's records. The purpose of the first audit was to examine whether petitioner complied with the Department's "modifier-62" radiology fee code. The Department concluded that petitioner had failed to use the code when billing for multiple sonograms and calculated the alleged overpayment to be in excess of $1 million. The second audit consisted of an examination of the billing and recordkeeping of petitioner's recordkeeping practices by statistical samples during the same time period.

In April 1990, the Department issued a notice of agency action proposing to exclude petitioner from the Medicaid program for five years and to seek restitution for overpayment in the amount of $1,886,304 plus interest. The notice charged petitioner with unacceptable practices of submitting false claims (18 NYCRR 515.2 [b] [1]), engaging in unacceptable recordkeeping (18 NYCRR 515.2 [b] [6]), furnishing excessive services (18 NYCRR 515.2 [b] [11]) and failing to meet recognized standards in furnishing services (18 NYCRR 515.2 [b] [12]). The Department made 384 disallowances because petitioner billed for in-depth sonograms, but allegedly only performed limited studies. Two hundred fifty three disallowances were based on missing documentation. Thirteen disallowances were based on services or additional tests not ordered by the treating physicians, three additional disallowances were based on petitioner's failure to issue a report for sonograms that were billed, and 30 disallowances were based on the inadequacy of the test upon which petitioner based his report.

Following an administrative hearing, the Administrative Law Judge (hereinafter ALJ) reversed the Department's findings from the first audit based on this Court's decision that the modifier-62 code applies only to X-rays, not sonograms (*see*, *Berger v New York State Dept. of Social Servs.*, 181 AD2d 12). As to the second audit, the ALJ reversed 383 of the 384 disallowances based on petitioner's use of an in-depth sonogram rather than a limited sonogram. The ALJ sustained one of the 384 disallowances in this category where petitioner evaluated a patient's gall bladder notwithstanding the referring physician's indication that the gall bladder had previously been surgically removed. The ALJ also reversed one of three disallowances based on petitioner's failure to render a report for a billed sonogram. The remaining disallowances were sustained

by the ALJ, as was the Department's determination to exclude petitioner from the Medicaid program for a period of five years. The matter was remitted to the Department for a recalculation of the overpayment. Subsequently, petitioner commenced this CPLR article 78 proceeding to review the determination. Supreme Court ordered the proceeding transferred to this Court pursuant to CPLR 7804 (g).

Petitioner argues that he was denied due process because the notice of agency action referred to "unacceptable practices" as defined in amended regulations, not those in effect during the January 1986 to December 1987 audit period. The issue was raised at the commencement of the hearing and the Department then conceded its error but stated that it would be relying on regulations in effect during the audit period (*cf.*, *Matter of Mecca v Dowling*, 210 AD2d 821, 824, *lv denied* 85 NY2d 809). The Department stated that it would be relying on 18 NYCRR 515.2 (former [b] [1], [2], [11], [20], [21]), which it claimed were similar to the amended regulations cited in the notice, and petitioner registered no objection. The ALJ determined that petitioner had not been denied due process and that petitioner had been fully apprised of the charges. We agree. "[T]he charges need only be reasonably specific, in light of all the relevant circumstances, to apprise the party [who is the subject of the hearing] * * * and to allow for the preparation of an adequate defense" (*Matter of Block v Ambach*, 73 NY2d 323, 333 [citations omitted]). Petitioner failed to demonstrate how he was prejudiced by the error in the notice (*see*, *Matter of Mecca v Dowling, supra*, at 824).

The ALJ determined that petitioner failed to "produce documentation necessary to verify that he actually performed all services covered by the fee codes under which he billed" and that such failure constituted an unacceptable practice pursuant to 18 NYCRR 515.2 (former [b] [11] and [12]). 18 NYCRR 515.2 (b) (6), cited in the notice, is substantially similar to 18 NYCRR 515.2 (former [b] [11]), so that petitioner was fully apprised of the charge of the unacceptable practice of inadequate recordkeeping. Petitioner was not prejudiced by the erroneous reference to 18 NYCRR 515.2 (former [b] [12]) in the ALJ's determination because the charge is fully sustainable under 18 NYCRR 515.2 (former [b] [11]).

Petitioner was also found to have violated 18 NYCRR 515.2 (former [b] [2]) "by allowing bills to be submitted on his behalf for services which were not ordered by the attending physician and for allowing bills to be submitted for services which were not performed". This finding was substantially similar to the

charge based upon 18 NYCRR 515.2 (b) (1) contained in the notice. Finally, although petitioner is correct that 18 NYCRR 515.2 (former [b] [1]), cited at the hearing, contained a scienter requirement not present in the amended regulations, the argument is irrelevant because the determination to sustain the disallowances was not based on this provision. The ALJ determined that petitioner was guilty of the unacceptable practice of inadequate recordkeeping (18 NYCRR 515.2 [former (b) (11)]) and making claims for unfurnished or unnecessary care (18 NYCRR 515.2 [former (b) (2)]).

Two hundred twenty five disallowances were sustained where petitioner was unable to produce any of the requested documentation regarding the claims, i.e., the treating physician's written order and petitioner's report on the sonogram. An additional 28 disallowances were sustained due to petitioner's failure to produce one of the requested documents as to certain samples. Petitioner attempted to cast the blame for these deficiencies on the sonogram companies. However, the ALJ could properly reject petitioner's explanation for his failure to maintain the records required by 18 NYCRR 515.2 (former [b]) (see, Matter of Mecca v Dowling, supra, at 825).

The remaining disallowances were sustained on the basis that they represented claims for unfurnished or unnecessary services in violation of 18 NYCRR 515.2 (former [b] [2]). One disallowance was made because petitioner evaluated a nonexistent gall bladder as "well visualized", notwithstanding the fact that the ordering physician indicated that it had been previously removed. The ALJ could properly reject petitioner's explanation that this was merely a mistake. In two cases, the patients' treating physicians informed the Department's auditors that they did not order the services. The ALJ was entitled to credit this representation, notwithstanding its hearsay nature (see generally, Matter of Enrico v Bane, 213 AD2d 784, 786). Similarly, 11 other disallowances were sustained based on "additional" tests which were performed but not ordered by the treating physician. Two other disallowances were sustained where petitioner failed to render a report on billed sonograms. Although petitioner claimed the two sonograms were not readable, claims for reimbursement were nonetheless made. Because the components of the fees could not be split, the reimbursement included compensation for a professional evaluation that was not performed. Moreover, petitioner acknowledged that Medicaid should not be billed unless sonograms are readable. Thirty disallowances were based on the fact that the images on the sonograms were unreadable and the Depart-

ment was unable to verify petitioner's evaluation. In the circumstances, the ALJ could properly find petitioner guilty of failing to maintain adequate records or submitting claims for inappropriate services or supplies. Petitioner was properly held liable for the overpayment. His argument to the contrary, which claims that he should not be held responsible because the companies directly received much of the reimbursement and then sent him a set fee, has previously been considered and specifically rejected (*see, Matter of Mecca v Dowling, supra*). Petitioner's provider number was used for the claims, a fact which petitioner concededly knew, and this fact makes petitioner responsible.

As to the penalty, a review of the determination reveals that the ALJ considered the factors set forth in 18 NYCRR 515.4 (b) in imposing the penalty. Petitioner has not shown that the penalty is so disproportionate to the offense as to be shocking to one's sense of fairness (*see, Matter of Roggemann v Bane*, 206 AD2d 622, 624, *lv denied* 84 NY2d 809).

The determination should, therefore, be confirmed and the petition dismissed.

Cardona, P. J., White, Yesawich Jr. and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.