Matter of Wegman v New York State Dept. of Health (2024 NY Slip Op 03570)

Matter of Wegman v New York State Dept. of Health

2024 NY Slip Op 03570

Decided on July 3, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 3, 2024

CV-23-0219
[*1]In the Matter of David Wegman, Doing Business as Angels in Your Home, Petitioner,
v
New York State Department of Health et al., Respondents.

Calendar Date:May 28, 2024

Before:Garry, P.J., Egan Jr., Lynch, Fisher and Powers, JJ.

Barclay Damon, LLP, Albany (Linda J. Clark of counsel), for petitioner.
Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for respondents.

Fisher, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Office of the Medicaid Inspector General to obtain reimbursement for Medicaid payments made to petitioner under the Traumatic Brain Injury Waiver Program.
Petitioner is the owner and operator of Angels in Your Home, a licensed home care services agency in Monroe County, which provides services to Medicaid recipients who have been diagnosed with a traumatic brain injury (hereinafter TBI). In September 2018, respondent Office of the Medicaid Inspector General (hereinafter OMIG), an independent office within respondent Department of Health (hereinafter DOH) responsible for "detecting and combating Medicaid fraud and abuse and maximiz[ing] the recoupment of improper Medicaid payments" (Public Health Law § 30), notified petitioner that it would be conducting an audit of a random sample of 100 Medicaid claims submitted by petitioner between January 1, 2013 and December 13, 2015 (hereinafter the audit period). OMIG provided petitioner a list of records it needed to validate the audited claims, and if auditors identified missing information to validate a claim, they provided petitioner with a "turnaround sheet" describing the missing information and providing petitioner an opportunity to turn over additional supporting documentation. OMIG then held an exit conference with petitioner, providing a summary of its findings and again affording petitioner a further opportunity to provide any missing or additional documentation.
Thereafter, OMIG issued its draft audit report (hereinafter DAR) in connection with petitioner's audit of the 100 claims, identifying 79 claims with at least one deficiency and finding a total of 148 violations of various regulations and DOH mandates across 13 findings, resulting in $14,816.31 worth of overpayments. OMIG also identified a total of 17,544 qualifying claims for the audit period and determined that the statistical sampling methodology employed in the audit allowed for extrapolation of the sample findings to the universe of claims (see 18 NYCRR 519.18 [g]), resulting in a total overpayment of $2,391,420.[FN1] The vast majority of the violations related to either inadequate or a complete lack of documentation. Petitioner's attorney responded to the DAR, raising certain objections and providing additional supporting documentation. Following its review, OMIG issued a final audit report eliminating one finding as argued by petitioner, and therefore adjusting the total overpayment amount to $2,376,559. Petitioner then requested an administrative hearing to contest the final audit report, whereafter the Administrative Law Judge (hereinafter ALJ) issued a determination upholding OMIG's disallowances. Petitioner commenced this proceeding, and Supreme Court transferred it to this Court (see CPLR 7804 [g]).
We confirm. In a proceeding pursuant to CPLR article 78, judicial review [*2]of a determination made by an administrative agency following an evidentiary hearing is limited to consideration of whether the findings were supported by substantial evidence (see CPLR § 7803 [4]; Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018]; Matter of Corning Natural Gas Corp. v Public Serv. Commn. of the State of N.Y., 221 AD3d 1075, 1078 [3d Dept 2023], appeal dismissed 41 NY3d 968 [2024]). "Substantial evidence is a minimal standard that requires less than the preponderance of the evidence and demands only the existence of a rational basis in the record as a whole to support the findings upon which the determination is based" (Matter of Vera-Llivicura v State of New York, 211 AD3d 1447, 1449 [3d Dept 2022] [internal quotation marks and citations omitted]). When contesting the findings of an OMIG audit, a petitioner has the burden of demonstrating "that all claims submitted and denied were due and payable under the [Medicaid] program" (18 NYCRR 519.18 [d] [1]; see Matter of Atlanticare Mgt., LLC v Ives, 212 AD3d 132, 137 [3d Dept 2022], lv denied 40 NY3d 902 [2023]).
In challenging the findings of an audit that were based on violations of certain program regulations, "the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable" (Matter of Clearview Ctr., Inc. v New York State Off. of the Medicaid Inspector Gen., 172 AD3d 1582, 1585-1586 [3d Dept 2019] [internal quotation marks and citation omitted]). As relevant here, in order to receive Medicaid funds, a provider must agree "to comply with the rules, regulations and official directives" of DOH (18 NYCRR 504.3 [i]) and "to prepare and . . . maintain contemporaneous records demonstrating its right to receive payment under the" program (18 NYCRR 504.3 [a]). In challenging the findings of an audit, petitioner "may not . . . raise any new matter [at a hearing] not considered by [OMIG] upon submission of objections to a [DAR]" (18 NYCRR 519.18 [a]; see Matter of Beth Israel Med. Ctr. v New York State Off. of Medicaid Inspector Gen., 221 AD3d 446, 447 [1st Dept 2023]; Matter of State Is. Care Ctr. v Zucker, 212 AD3d 489, 490 [1st Dept 2023]). Further, "[a]n extrapolation based upon an audit utilizing a statistical sampling method certified as valid will be presumed, in the absence of expert testimony and evidence to the contrary, to be an accurate determination of the total overpayments made or penalty to be imposed" (18 NYCRR 519.18 [g]; see also Matter of Fast Help Ambulette, Inc. v New York State Dept. of Health, 198 AD3d 756, 758 [2d Dept 2021]).
Here, we agree with respondents that substantial evidence supports the ALJ's determination that the challenged payments were not authorized by the TBI waiver program. At the hearing, OMIG presented evidence demonstrating that petitioner's staff failed to complete certain trainings [*3]before performing services on patients, including required orientation and program updates. Other training records indicated improper substitutions for orientation training, including a "supervisory visit." Additional records reflected that staff completed trainings required for different waiver programs, but not those required for the TBI waiver program. Relating to other personnel records, evidence also demonstrated that certain staff were missing required vaccinations or annual health assessments, including that some staff had their tuberculosis test results read by a provider that was not qualified to do so. Moreover, petitioner also failed to submit evidence that necessary criminal background checks were completed, and the audit discovered that a service provider who did not appear on DOH's approved list for TBI providers had performed services on patients. Although certain violations relied upon OMIG's interpretations of its TBI program manual, such requirements neither contradicted nor significantly altered the conditions for payment required by the pertinent regulations (see Matter of Lock v New York Dept. of Social Servs., 220 AD2d 825, 827 [3d Dept 1995]). In rebuttal, attempting to justify the lack of documentation, petitioner raised for the first time at the hearing that certain personnel records had allegedly been stolen by a rogue ex-employee and that OMIG's audit was precluded by DOH's prior survey that found no violations.[FN2] However, since these objections were not raised in response to the DAR, such challenges were unpreserved and petitioner was precluded from challenging those findings (see 18 NYCRR 519.18 [a]; Matter of State Is. Care Ctr. v Zucker, 212 AD3d at 490).
Similarly, petitioner also failed to preserve challenges relating to OMIG's extrapolation of disallowances in response to the DAR, except for findings 9 and 10.As it relates to findings 9 and 10, the ALJ properly found that the testimony from petitioner's expert failed to overcome the presumption that an extrapolation, using a certified valid statistical sampling method, is an accurate determination of the total overpayments made (see 18 NYCRR 519.18 [g]; see also West Midtown Mgt. Group, Inc. v State of N.Y., Dept. of Health, Off. of the Medicaid Inspector Gen., 31 NY3d 533, 536 [2018]). Specifically, OMIG presented testimony from an auditor who described the mathematical basis for the extrapolation and concluded that such results were statistically valid for the entire universe of claims. In response, petitioner offered the testimony of Warren Bilker, a statistician, who conceded that he had not reviewed the certification by OMIG's statistical consultant and that the sample size of 100 claims could be acceptable for the purposes of an extrapolation. However, he testified that extrapolating isolated errors was not advisable, particularly where there was only one such error in the sample. In rejecting this contention, the ALJ found that the isolated error challenged [*4]by petitioner related to missing documentation, which was an error that related to the majority of the cited errors in other findings, and therefore was not an unusual finding that precluded extrapolation. Based on the record before us and the lack of other competent evidence offered by petitioner to challenge OMIG's extrapolation methodology, we find that substantial evidence supports OMIG's extrapolation (see Matter of Fast Help Ambulette, Inc. v New York State Dept. of Health, 198 AD3d at 758).
Based on the foregoing and upon our review of the record, petitioner failed to demonstrate that the claims submitted and denied were payable under the TBI waiver program (see 18 NYCRR 519.18 [d] [1]). Accordingly, we find that there is substantial evidence in the record to support OMIG's disallowances, and we decline to overturn its determination (see Matter of Atlanticare Mgt., LLC v Ives, 212 AD3d at 144; Matter of Fast Help Ambulette, Inc. v New York State Dept. of Health, 198 AD3d at 759; Matter of Odd Fellow & Rebekah Rehabilitation & Health Care Ctr., Inc. v Commissioner of Health of State of N.Y., 107 AD3d 1095, 1098 [3d Dept 2013]). We have examined the parties' remaining contentions and have found them to be without merit, unpreserved or academic.
Garry, P.J., Egan Jr., Lynch and Powers, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: This figure represents that adjusted point estimate of total dollars. The adjusted lower confidence limit figure was calculated to be $1,958,790.

Footnote 2: To the extent that the record contains evidence that OMIG was aware of the alleged theft of records, petitioner conceded that the alleged theft was not reported to OMIG's self-disclosure unit as a provider was required to do.