■ In the Matter of MICHAEL M. KATZ et al., Petitioners, v COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES, Respondent. [632 NYS2d 867] —Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination by respondent which excluded petitioner from participation in the Medicaid program for a period of five years and ordered restitution for alleged overpayments.

Following audits of their records for 1986 and 1987, petitioners, Michael M. Katz (a licensed radiologist) and MM Diagnostic Radiology, P. C. (a professional corporation owned and operated by Katz), who were enrolled service providers in the Medicaid program administered by the Department of Social Services (hereinafter the Department), were found to have engaged in unacceptable practices and ordered to make restitution of more than $596,000. Katz was also barred from participating in the Medicaid program for five years. The unacceptable practices consisted of recordkeeping errors and omis-

sions; essentially, respondent found that petitioners' records did not support many of the claims for payment they had submitted to Medicaid. Petitioners maintain that they complied with the Department's regulations.

Initially, it is necessary to dispose of a procedural point. Petitioners contend that respondent's designee impermissibly granted the Department's motion to amend the notice of agency action respecting the second ("billing") audit—apparently prompted by this Court's decision in *Berger v New York State Dept. of Social Servs.* (181 AD2d 12)—to increase the amount of recoupment sought, after the hearing before the Administrative Law Judge (hereinafter ALJ) had concluded. As we have noted previously, in a factual context materially identical to that presented here (*see, Matter of Mecca v Dowling*, 210 AD2d 821, 823, *lv denied* 85 NY2d 809), the regulatory requirement that providers be afforded written notice of the amount of the overpayment determined prior to the hearing (*see*, 18 NYCRR 515.6 former [a] [1]) precludes the challenged posthearing amendment. Accordingly, recoupment of disallowed payments must be limited to the amounts recited in the final notice originally issued to petitioners.

Regarding the merits, it is petitioners' contention that respondent erred by disallowing payment for certain procedures solely on the basis of an agency employee's representation that Abraham Lock, the physician who purportedly ordered them, had denied having done so, coupled with Lock's written statement confirming that the signatures were not his. We disagree. Lock's statement, though hearsay, was properly admitted (*see*, 18 NYCRR 519.18 [b]; State Administrative Procedure Act § 306 [1]; *Matter of Gray v Adduci*, 73 NY2d 741, 742) and is a sufficient basis for the department's disallowance of payment for the services (30 in all), principally ultrasound procedures, that petitioners furnished pursuant to the seven orders Lock denied having signed. Petitioners, in turn, submitted nothing to rebut this showing, and respondent was therefore justified in demanding repayment of the amounts disbursed to petitioners for these claims (as extrapolated to the universe of cases [9,103] billed during the audit period).

Petitioners also challenge respondent's disallowance of payment for 123 services, with respect to which it found that petitioners had not produced adequate supporting documentation. In an attempt to meet their burden to disprove these allegations of unacceptable recordkeeping (*see*, 18 NYCRR 519.18 [d] [1]), petitioners proffered, at the hearing, copies of the order forms and result reports for 118 of the procedures in question.

To justify the late production of these records, and the fact that video images of the scans were not offered, Katz explained that his patient records—which had been turned over to the Deputy Attorney-General for Medicaid Fraud Control (hereinafter the Special Prosecutor), pursuant to subpoena, prior to the audit, and had been searched by department investigators in the Special Prosecutor's office—had not been returned to him until after respondent had issued its final notices of agency action. Katz testified that when the files were returned, he discovered that many items, including the photographs and videotapes of the ultrasound procedures at issue, were missing. At that point, realizing that he would not be able to tender the original documentation, including the photographic images sought by respondent, he turned to the partial copies of the records that he had made before delivering them to the Special Prosecutor, wherein he found the order forms and reports for 118 of the 123 services in dispute. It was these copies petitioners sought to introduce at the hearing.

The ALJ admitted these records into evidence, despite respondent's assertion that they should not be considered, having been neither tendered before issuance of the final notice of agency action, nor disclosed at the prehearing conference. Nevertheless, the ALJ ultimately recommended upholding the disallowances, finding petitioners' delay in producing the copies to have been unjustified. Respondent's designee reached the same result, but without addressing the tardiness issue, concluding instead that even if the copies were considered, they did not constitute complete documentation for the services in question, there being "no convincing evidence" that any of the missing photographic images had actually been among the documentation turned over to the Special Prosecutor.

This conclusion is untenable. The record evidence establishes that the paper documentation for 118 of the claims was lost, through no fault of petitioners, after Katz surrendered his files to the Special Prosecutor. Although petitioners have not conclusively proven that a similar fate befell the photographic images associated with these claims, under these unique circumstances, where the files in question were not under petitioners' control for a substantial period of time, the fact that orders and reports therein were lost provides ample corroboration for Katz's uncontroverted testimony that the photographs and tapes were as well. Given this, fairness dictates that petitioners' inability to furnish the photographic images, alone, should not be fatal to their attempt to refute

the charges of unacceptable recordkeeping. Accordingly, inasmuch as respondent's disallowance of the claims is predicated solely on that basis, it must be reversed. The matter must, however, be remitted, so that respondent may consider whether the late submission of the remainder of the documentation for these services should be excused, and if so, whether that documentation is sufficient, in all respects other than the lack of photographic verification, to support allowance of payment for the 118 services assertedly provided.

Mikoll, J. P., Crew III, White and Spain, JJ., concur. Adjudged that the determination is annulled, with costs, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.